# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3253

_____

Michael Altimore,      \*

        \*

      Appellant,     \*

        \*   Appeal from the United States

    v.         \*   District Court for the

        \*   Northern District of Iowa.

Mount Mercy College, Cedar     \*

Rapids, Iowa,     \*

        \*

      Appellee.     \*

_____

Submitted: June 20, 2005

Filed: August 24, 2005

_____

Before RILEY, BOWMAN, and BENTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Dr. Michael Altimore (Dr. Altimore) sued his former employer, Mount Mercy College (Mount Mercy), in Iowa state court, alleging breach of contract. Mount Mercy counterclaimed for breach of contract, and removed the case to federal court. Dr. Altimore moved to remand the case to state court, arguing the federal court lacked subject matter jurisdiction because diversity of citizenship did not exist. The district court denied Dr. Altimore's remand motion, concluding it had subject matter jurisdiction based on diversity of citizenship. Mount Mercy later moved for summary judgment on its breach of contract claims, which the district court granted. Dr. Altimore appeals the adverse remand and summary judgment rulings. We affirm.

## I.  BACKGROUND

After a decade of service to Mount Mercy, Dr. Altimore, a sociology professor, took sabbatical leave during the 1992-1993 academic year.  In 1994, Mount Mercy granted tenure to Dr. Altimore.  On October 7, 1998, Dr. Altimore applied for another year of sabbatical leave for the 1999-2000 academic year.  Believing he "would return a better teacher," Dr. Altimore proposed to spend his sabbatical leave conducting "extensive reading in my discipline," researching the sociology of medicine, and studying Italian.  On November 17, Mount Mercy granted sabbatical leave to Dr. Altimore for the 1999-2000 academic year on the following conditions: (1) Mount Mercy could secure suitable replacements for Dr. Altimore; (2) Dr. Altimore would "continue to serve [Mount Mercy] for 24-credit hours (2 semesters) of academic service following the leave or reimburse [Mount Mercy] for the costs of the substitute(s)"; (3) Dr. Altimore would pursue the objectives outlined in his request for sabbatical leave; and (4) Dr. Altimore would provide a written report on his sabbatical leave no later than June 30, 2000.  In granting Dr. Altimore another year of sabbatical leave, Mount Mercy stated the leave would "serve to further the mission and goals of Mount Mercy."  During the year-long sabbatical, Mount Mercy paid Dr. Altimore's medical benefits and paid one-half of his annual salary.

On March 28, 2000, Dr. Altimore signed a full-time faculty contract to teach at Mount Mercy during the 2000-2001 academic year.  However, Dr. Altimore later requested unpaid leave for the 2000-2001 academic year, which Mount Mercy granted.  Mount Mercy informed Dr. Altimore, "It is understood that you will return to full-time teaching at Mount Mercy commencing with the 2001-2002 academic year to fulfill the terms of your 1999-2000 sabbatical leave."  Before Mount Mercy granted Dr. Altimore leave for the 2000-2001 academic year, Dr. Altimore accepted a position as a visiting professor of sociology at Temple University (Temple) in Pennsylvania.

On March 29, 2001, Dr. Altimore signed a full-time faculty contract to serve at Mount Mercy for the 2001-2002 academic year. However, on June 5, eleven weeks before the beginning of the academic year, Dr. Altimore requested medical leave for the 2001-2002 academic year so he could have knee surgery while retaining Temple's insurance benefits. Dr. Altimore informed Mount Mercy he believed "it would be best for [Mount Mercy] to hire a one-year replacement for me rather than count on my return." On June 7, Dr. Altimore had outpatient surgery on his knee. In a letter dated June 8, Mount Mercy denied Dr. Altimore's request for a third consecutive year of absence, asking that he return to Mount Mercy and that he report on his sabbatical leave project. Mount Mercy also stated, "If for any reason you are not in agreement that you will return to teach at [Mount] Mercy for the 2001-2002 academic year, please contact [the Vice President for Academic Affairs] in writing no later than June 25, 2001."

On June 25, Dr. Altimore informed Mount Mercy by letter that he would not return for the 2001-2002 academic year:

> I have received your letter of June 8, 2001, in which you rejected my request for a one-year, unpaid medical leave of absence for the 2001-2002 academic year. In that letter you asked me to respond to you in writing should I not be "in agreement . . . to return to teach at [Mount] Mercy for the 2001-2002 academic year." *Please let this e-mail serve as my written response in which I do inform you that I am not in agreement.* . . . Therefore, I do once again request a one-year, unpaid medical leave of absence. . . .

(emphasis added). Dr. Altimore sent a copy of this letter to Mount Mercy's President. On June 29, Temple appointed Dr. Altimore to be a visiting professor of sociology for the 2001-2002 academic year. Dr. Altimore accepted the appointment on July 4.

On July 2, Mount Mercy notified Dr. Altimore it "simply [was] not in a position to grant the [requested medical] leave." Thus, Mount Mercy informed Dr. Altimore,

> It's [our] understanding that you are not returning to Mount Mercy this fall. We view this as a voluntary resignation of your position. We need to proceed and fill [your] position immediately in order to meet the needs of the fall semester. [We] will arrange to box your belongings as well as your mail and ship them to the address of your choice.

On July 12, Dr. Altimore's attorney wrote Mount Mercy about "a possible wrongful termination claim." In the letter, the attorney declared "that Dr. Altimore did NOT resign his professorship." The attorney also informed Mount Mercy its conduct breached Dr. Altimore's contract, as well as violated the Americans with Disabilities Act (ADA), the Iowa Civil Rights Act, and "Blacklisting laws." However, the attorney asked "whether there is any reasonable basis for amicably resolving this dispute so that [Dr. Altimore] can leave his professorship on good terms." The letter did not indicate Dr. Altimore was willing to return to Mount Mercy.

Mount Mercy's attorney responded to Dr. Altimore's attorney by contending Dr. Altimore's disability was not protected under the ADA or the Iowa Civil Rights Act. Mount Mercy's attorney also claimed "Dr. Altimore's refusal to return to [Mount] Mercy is clearly an abandonment of his employment and constitutes his resignation. Dr. Altimore's present position with Temple University demonstrates further the abandonment of his employment with [Mount] Mercy." Finally, Mount Mercy's attorney reminded Dr. Altimore that he breached his sabbatical contract by not producing a written report on his sabbatical activities, and by not providing twenty-four credit hours of service to Mount Mercy. Based on the breach of the sabbatical contract, Mount Mercy asked Dr. Altimore to reimburse Mount Mercy for

the costs of hiring the substitute professor to teach Dr. Altimore's courses during the sabbatical year.

Dr. Altimore did not return to Mount Mercy for the 2001-2002 academic year. Dr. Altimore has never reported to Mount Mercy on his efforts during his sabbatical leave and has not reimbursed Mount Mercy for the costs of hiring replacements during his leave. Dr. Altimore remains a temporary member of Temple's faculty.

Mount Mercy's Faculty Manual dictates that Mount Mercy can terminate a tenured appointment "only for adequate cause," and pursuant to specified dismissal procedures. According to the Faculty Manual, Mount Mercy bears the burden to prove by clear and convincing evidence that adequate cause for dismissal exists. In addition to adequate-cause dismissals, the Faculty Manual also governs resignations:

> Notice shall be given as early as possible after the faculty member has decided to resign. In all but extreme cases, notice should be given at least three months before the end of service. Notice of resignation should be given in writing to the President of [Mount Mercy] College, who may or may not accept it, depending on whether or not it will cause hardship to the College. If the resignation is accepted, the College shall be willing to provide references and academic summaries to prospective employers as requested by the faculty member.

Dr. Altimore contends Mount Mercy dismissed him, while Mount Mercy maintains Dr. Altimore resigned.

In September 2002, Dr. Altimore sued Mount Mercy in Iowa state court, alleging breach of contract. Mount Mercy counterclaimed, claiming Dr. Altimore breached his 1998 sabbatical contract and his 2001 employment contract. Mount Mercy later removed the case to federal court. Dr. Altimore moved to remand the case to state court, arguing the federal court lacked subject matter jurisdiction based

on diversity of citizenship because Dr. Altimore and Mount Mercy were Iowa citizens. Mount Mercy agreed it was an Iowa citizen, but maintained Dr. Altimore was a Pennsylvania citizen, such that the federal court had jurisdiction.

When Dr. Altimore filed his lawsuit against Mount Mercy, he had physically resided in Pennsylvania since 2000; worked there; obtained a Pennsylvania driver's license; registered to vote and voted there; banked there; sought and received medical treatment there; paid taxes there; and listed Pennsylvania as his address on his Temple personal data form, on his employment eligibility verification form, and on his tax withholding form. In an affidavit prepared for this litigation, Dr. Altimore declared he "left [his] personal effects, paperwork, writings, confidential documents, and other materials at [his] office at Mount Mercy before leaving for [his] leave of absence in 2000." Dr. Altimore also maintained in his affidavit that, although he had moved to Pennsylvania, he "did not intend to change [his] home base from Iowa to Pennsylvania, nor did [he] intend to remain [in Pennsylvania] indefinitely."

Addressing the diversity of citizenship issue, the district court[1] made the following findings about Dr. Altimore:

> [Dr. Altimore] accepted a teaching position at Temple University in Pennsylvania for the 2000-2001 academic year, the 2001-2002 academic year, and has contracted to teach there for the 2002-2003 academic year. He has resided in New Jersey and Pennsylvania since 2000, and his present address is in Pennsylvania. He is registered to vote in Pennsylvania, pays taxes in Pennsylvania, has a bank account in Pennsylvania, and the only property he has [in Iowa] consists of books and papers left at Mount Mercy College, which will be shipped to him upon his providing shipping instructions.

---

[1]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

Concluding the facts demonstrate Dr. Altimore's "presence and intent" show he is a Pennsylvania citizen, the district court determined "citizenship is diverse and subject matter jurisdiction exists." Therefore, the court denied Dr. Altimore's motion to remand to state court.

Mount Mercy later moved for summary judgment on its breach of contract claims. The district court[2] held Dr. Altimore breached his 2001 employment contract with Mount Mercy based on the following evidence: Mount Mercy was willing to perform under the contract; Mount Mercy's denial of an unprecedented third year of leave did not alter the terms of the contract; Dr. Altimore signed an employment contract with Temple while contractually obligated to teach at Mount Mercy and after Mount Mercy denied his request for a third year of leave; Dr. Altimore told Mount Mercy he was not going to return to teach for the 2001-2002 academic year; Dr. Altimore's attorney sought a way to resolve the dispute so Dr. Altimore could leave his Mount Mercy professorship on good terms; and no evidence suggests Mount Mercy attempted to "get rid of" Dr. Altimore without following the Faculty Manual. The district court concluded Dr. Altimore "voluntarily resigned his position and would not return to teach." The district court also held Dr. Altimore breached the 1998 sabbatical contract by failing to file a report on his sabbatical activities, by failing to return to Mount Mercy to teach twenty-four credit hours, and by failing to reimburse Mount Mercy for the cost of replacing Dr. Altimore during his sabbatical leave. Thus, the district court granted summary judgment to Mount Mercy on its contract claims.

Before a trial could be conducted on the damages incurred by Mount Mercy caused by Dr. Altimore's breaches of his 1998 and 2001 contracts, Dr. Altimore and

---

[2]The Honorable John A. Jarvey, Chief Magistrate Judge, United States District Court for the Northern District of Iowa, to whom the case was referred for decision by consent of the parties. 28 U.S.C. § 636(c).

Mount Mercy stipulated to a consent judgment. Under the terms of the consent judgment, Dr. Altimore consented "to a judgment being entered against him in favor of Mount Mercy College in the total sum of $36,000 on the breach of contract claims." However, the consent judgment reserved Dr. Altimore's rights to appeal the district court's denial of his remand motion and its grant of summary judgment to Mount Mercy on its breach of contract claims. Dr. Altimore now exercises those rights.

## II. DISCUSSION
### A. Diversity of Citizenship

Federal courts have subject matter jurisdiction in this case based on diversity of citizenship if Dr. Altimore and Mount Mercy are "citizens of different States." 28 U.S.C. § 1332(a)(1); Yeldell v. Tutt, 913 F.2d 533, 537 (8th Cir. 1990). Because Mount Mercy removed this case to federal court, it bears the burden of establishing jurisdiction by a preponderance of the evidence. Yeldell, 913 F.2d at 537. Whether diversity of citizenship exists is determined at the time the suit is filed–not when the cause of action arose. Id. The district court's "determination of citizenship for the purpose of diversity is a mixed question of law and fact, but mainly fact." Blakemore v. Mo. Pac. R.R. Co., 789 F.2d 616, 618 (8th Cir. 1986). Although we review de novo questions of federal subject matter jurisdiction, see Canady v. Allstate Ins. Co., 282 F.3d 1005, 1012 (8th Cir. 2002), the district court's "findings upon which the [diversity] determination is made may not be set aside by an appellate court unless clearly erroneous," Blakemore, 789 F.2d at 618.

The legal standard to determine citizenship is straightforward. Citizenship is determined by a person's physical presence in a state along with his intent to remain there indefinitely. Yeldell, 913 F.2d at 537. Once an individual has established his state of citizenship, he remains a citizen of that state until he legally acquires a new state of citizenship. Id. As the parties do not dispute Mount Mercy is an Iowa

citizen, we focus on Dr. Altimore's citizenship, and ask whether the district court erroneously determined Dr. Altimore is a Pennsylvania citizen.

In his quest to sue Mount Mercy in state court, Dr. Altimore subjectively maintains he is an Iowa citizen. However, his conduct over the past few years belies his litigation position. The record contains overwhelming evidence pointing to Pennsylvania as Dr. Altimore's state of citizenship–Dr. Altimore resides in Pennsylvania; teaches sociology in Pennsylvania; votes in Pennsylvania; banks in Pennsylvania; possesses a Pennsylvania driver's license; seeks medical treatment in Pennsylvania; pays taxes in Pennsylvania; and, when asked by Temple and the federal government to list his address, lists Pennsylvania. The State of Iowa might be surprised to discover Dr. Altimore contends he is an Iowa citizen even though he pays no taxes in Iowa, has not worked in Iowa since 2000, owns no property in Iowa, does not live in Iowa, does not visit Iowa, does not bank in Iowa, does not vote in Iowa, does not seek medical treatment in Iowa, and does not possess an Iowa driver's license.

Dr. Altimore contends the materials he left in his Mount Mercy office show he intends to return to Iowa. However, Dr. Altimore has repeatedly revealed the importance of these materials by neglecting them while he taught sociology at Temple and by refusing to provide Mount Mercy with a forwarding address. Leaving papers and the like in a college office cannot overcome the evidence mentioned above. Dr. Altimore also claims he retained his Iowa citizenship by signing an employment contract with Mount Mercy in March 2001, which showed his intent to return to Iowa. As he subsequently breached this contract (as discussed below) to remain in Pennsylvania, we fail to see how this argument assists his litigation position on the diversity issue. The minimal evidence linking Dr. Altimore to Iowa combined with his subjective assertions of citizenship do not outweigh the strong and clear evidence indicating Dr. Altimore is a Pennsylvania citizen.

Because we agree with the district court's determination that Dr. Altimore is a Pennsylvania citizen, we conclude diversity of citizenship exists in this case such that federal courts have subject matter jurisdiction.

### B.    Breach of Contract

We review de novo the district court's grant of summary judgment to Mount Mercy. Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir. 2003). Summary judgment for Mount Mercy is proper if the evidence, viewed in the light most favorable to Dr. Altimore and giving him the benefit of all reasonable inferences, shows there are no genuine issues of material fact and Mount Mercy is entitled to judgment as a matter of law. See id.; Fed. R. Civ. P. 56(c). Although the parties do not explicitly reference which state law applies in this diversity action, the district court and the parties have applied Iowa contract law throughout these proceedings. Therefore, we also will apply Iowa contract law in this diversity case. Ewald v. Wal-Mart Stores, Inc., 139 F.3d 619, 621 (8th Cir. 1998).

According to Iowa law, an employment relationship is generally terminated either by resignation or by discharge. Balmer v. Hawkeye Steel, 604 N.W.2d 639, 641 (Iowa 2000). "An employee voluntarily severs the relationship by resigning; the employer does so by discharging the employee." Id. Dr. Altimore and Mount Mercy agree the "key issue" on the breach of contract claims is "whether Dr. Altimore resigned or was terminated from his tenured position at Mount Mercy College." Dr. Altimore concedes that, if he resigned his position, then he breached his 1998 sabbatical contract and his 2001 employment contract. However, Dr. Altimore contends he did not resign his position, but was dismissed without "adequate cause" in violation of his employment contract. Dr. Altimore maintains "hotly disputed" fact issues exist on whether he resigned or was dismissed. Thus, Dr. Altimore argues the case should be remanded for a jury trial.

-10-

To establish a breach of contract claim under Iowa law, Mount Mercy must establish (1) a contract existed; (2) the contract's terms and conditions; (3) Mount Mercy performed the contract's terms and conditions; (4) Dr. Altimore breached the contract; and (5) Mount Mercy suffered damages as a result of the breach. See Molo Oil Co. v. River City Ford Truck Sales, Inc., 578 N.W.2d 222, 224 (Iowa 1998). If Dr. Altimore failed to perform, without legal excuse, any promise which forms a whole or a part of the 1998 and 2001 contracts, Dr. Altimore breached those contracts. Id. As acknowledged by the parties, this case turns on whether we can decide, as a matter of law, Dr. Altimore resigned his position in breach of the 1998 and 2001 contracts, i.e., whether Mount Mercy established the fourth element of its breach of contract claims.

Dr. Altimore spends an inordinate amount of time arguing a reasonable interpretation of his communications and conduct suggests he did not resign his position at Mount Mercy. However, the record plainly reveals Dr. Altimore resigned his position. On March 29, 2001, Dr. Altimore signed a contract with Mount Mercy promising to return to teach after a two-year absence. On June 5, despite the promises made on March 29, Dr. Altimore requested a third consecutive year of leave to remain at Temple to keep his benefits. Three days later, Mount Mercy denied Dr. Altimore's request, expecting him to return to Mount Mercy to perform his contractual obligations. In clear and unmistakable language, Mount Mercy asked Dr. Altimore to respond in writing "[i]f for any reason [he was] not in agreement that [he would] return to teach at [Mount] Mercy for the 2001-2002 academic year." On June 25, Dr. Altimore replied, "I am not in agreement." Despite Mount Mercy's clear denial of Dr. Altimore's leave request and its even clearer question of whether he was going to return to Mount Mercy to fulfill his contractual obligations, Dr. Altimore again requested leave, operating under the apparent belief he had a unilateral right to rewrite the terms of his employment contract. At this point, the only reasonable interpretation of the correspondence between the parties is (1) Mount Mercy directly asked Dr. Altimore if he was going to return to Mount Mercy to perform under his

2001 employment contract, and (2) Dr. Altimore clearly and unequivocally refused to return to Mount Mercy. Armed with Dr. Altimore's response that he was not going to return for the 2001-2002 academic year, Mount Mercy informed Dr. Altimore it considered his refusal to return to be a voluntary resignation. Without any indication he planned to return to Mount Mercy as required under his 2001 employment contract, Dr. Altimore contracted to teach at Temple for the 2001-2002 academic year. True to his word, Dr. Altimore did not return to teach at Mount Mercy.

Dr. Altimore seems to argue his words and deeds could reasonably be construed to mean he was going to return to Mount Mercy, as he promised to do in his 1998 and 2001 contracts, but that he could do so when he deemed it desirable. To be sure, Dr. Altimore's ultimate contention is he had the right to issue an ultimatum to Mount Mercy–even in light of two contracts–that he be granted leave for an unprecedented third year. Based on Dr. Altimore's contracts and conduct, the Mount Mercy Faculty Manual, and the correspondence between Dr. Altimore (or his attorney) and Mount Mercy, the law cannot condone such an interpretation.

Dr. Altimore had the right to resign his position, and he exercised that right. The Faculty Manual provides guidance on how a faculty member resigns his position. For example, the Faculty Manual requires the faculty member to provide notice of resignation "as early as possible after the faculty member has decided to resign." The manual also recommends–but does not require–the faculty member provide at least three months' written notice to Mount Mercy's President. A fair reading of Dr. Altimore's correspondence and conduct shows he resigned. For example, in his June 25 letter to Mount Mercy and its President, Dr. Altimore made clear he was not returning to Mount Mercy for the 2001-2002 academic year. This notice just happened to be in writing and was issued nearly three months before the beginning of the academic year. Unless we were to conclude Dr. Altimore had the right to return to Mount Mercy if and when he chose to return, the only reasonable interpretation of Dr. Altimore's June 25 correspondence is he resigned.

As determined by the district court, there is no indication Mount Mercy wanted to dismiss Dr. Altimore. Indeed, Mount Mercy approved a second year of sabbatical leave for Dr. Altimore seven years after his first sabbatical leave, and then followed the second year of sabbatical leave with another year of leave. When Dr. Altimore sought a third consecutive year of leave, Mount Mercy declined the request. But Dr. Altimore demanded Mount Mercy grant him a third consecutive year of leave. Even when Mount Mercy notified Dr. Altimore it would not grant him another year of leave, Dr. Altimore defied Mount Mercy's decision and insisted on his right to another year of leave, even as he was signing a contract to teach another year at Temple. This conduct does not evince Mount Mercy's desire to dismiss Dr. Altimore, rather, it shows Dr. Altimore was irrevocably not returning to Mount Mercy.

Dr. Altimore's intent to resign also can be gleaned from his decision not to invoke the intricate dismissal provisions contained in the Faculty Manual. If Dr. Altimore believed he had been dismissed without adequate cause, he and his attorney could have invoked the remedies in the Faculty Manual. Instead, Dr. Altimore refused to return to Mount Mercy, did not return to Mount Mercy, hired an attorney, threatened a lawsuit, sought an amicable way to leave his professorship, contracted to teach at Temple, taught at Temple, and, ultimately, sued Mount Mercy.

Applying Iowa law and common sense,[3] we conclude Dr. Altimore resigned his position with Mount Mercy by refusing to return to teach as required under his 2001 employment contract. Dr. Altimore's breach of the 2001 employment contract, in turn, resulted in his breach of the 1998 sabbatical contract, as he has not reported his sabbatical activities to Mount Mercy, taught twenty-four additional credit hours at Mount Mercy, or reimbursed Mount Mercy for the cost of hiring replacements. Because the district court properly granted summary judgment to Mount Mercy on its breach of contract claims, the consent judgment should be enforced.

---

[3]Common sense is like seawater–easy to swim in, but difficult to swallow.

## III.   CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Dr. Altimore's motion to remand and its entry of summary judgment in Mount Mercy's favor.

_____