# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1205

_____

In re: Prempro Products Liability    *
Litigation,    *
--------------------------------------    *
   *
Sandra Kirkland; Patricia Lawton-    *
Wilson; Monica Lee; Katherine    *
Maiello; Dorothy Mallette; Nola    *
McAdoo; Lillian Meeks; Brenda    *
Nicholson; Joanne Nickel; Barbara    *
Norvell; Reva Orr; Regina Parker;    *    Appeals from the United States
April Patterson; Kathleen Perkinson;    *    District Court for the
Donna Peters; Joanne Peterson; Mary    *    Eastern District of Arkansas.
Phillips; Viola Plieseis; Joyce    *
Podhayski; Kathleen Preston; Lydia    *
Ross; Diane Simon; Ruth Sitzmann;    *
Mary Sorenson; Flora Spencer; Sue    *
Standriff; Patricia Stone; Tena    *
Valentine; Diana Walters; Marion    *
Walters; Judy Wegenast; Charlene    *
Weinmann; Helen Whaley; Marilyn    *
Will; Francine Wixen; Joyce Wood,    *
   *
        Plaintiffs-Appellants,    *
   *
Joyce Yonushewski,    *
   *
        Plaintiff,    *
   *
Phyllis Goode; Carol Haney; Patricia    *
Kruse; Sally Laufketter; Ann Moran;    *
Judith Petersen; Patricia Rogers; Jewell    *
Tolkin; Donna Wheeler; Charlene    *

McComas; Muriel Pitsinger; Ruby    *
Robbins; Mary Steele; Donna Taube;   *
Joyce Waugh; Alba Cordon; Bertha    *
Watcher; Joan Thompson,      *
             *
    Plaintiffs-Appellants,    *
             *
Nancy States; Anna Soloman,     *
             *
      Plaintiffs,      *
             *
    v.           *
             *
Wyeth, and its divisions; Wyeth     *
Pharmaceuticals, Inc.; ESI Lederle;   *
Pfizer, Inc.; Pharmacia & Upjohn    *
Company; Pharmacia Corporation;    *
Barr Laboratories, Inc.; Mead     *
Johnson & Company; Solvay      *
Pharmaceuticals; Novartis       *
Pharmaceuticals Corporation; Watson   *
Laboratories, Inc.; Greenstone Ltd.;   *
Does 1-10,           *
             *
    Defendants-Appellees.    *

    _____

    No. 09-1250
    _____

In re: Prempro Products Liability    *
Litigation,           *
--------------------------------------   *
             *
             *
Rick Jasperson, as Trustee for Next-of-   *

Kin Decedents Gail Gilliam, Marcia          *
Kunkel, Elizabeth Roszak, Mary Solis,       *
Bea Zissel a/k/a Phyllis Bea Zissel,        *
                                            *
            Plainiff-Appellant,             *
                                            *
    v.                                      *
                                            *
Wyeth, and its divisions; Wyeth             *
Pharmaceuticals, Inc.; ESI Lederle;         *
Pfizer, Inc.; Pharmacia & Upjohn            *
Company; Pharmacia Corporation;             *
Does 1-10,                                  *
                                            *
            Defendants-Appellees.           *


            _____


       No. 09-1373

            _____


Dorothy Allen; Judith Allen; Loretta        *
Andrews; Janet Arbogast; Karen              *
Awald; Carol Bannerman; Phyllis             *
Barnes; Joanne Barrett; Joanne Black;       *
Mary Bowden; Hazel Burgess; Joyce           *
Burpee; Virginia Campbell; Adrianne         *
Carrera; Lois Carter; Margaret              *
Chamness; Mary Chrisco; Peggy               *
Clemons; Sally Collins; Barbara             *
Couch; Mary Dawson; Lois Duffy;             *
Linda Eells; Frances Farr; Marjorie         *
Flaman; Margaret Foltz; Wanda Foltz;        *
Delois Foster; Jo Garrison O'Neil;          *
Sharon Haemker; Margaret Harris;            *
Louise Hess; Wanda Hinceman; Alice          *
Holtzman; Rita Hren; Nancy Hunter;          *

-3-

Yvonne Hutchinson; Glenda Ivey; Doris Jerome; Grace Kiger; Patsy Anderson; Juanita Brouwer; Nata Cargan; Nancy Jo Carter; Jan Costa Rydjeske; Wilma Cowart; Patricia Fernau; Isabel Fragoso; Doris Gist; Helen Penny Aros,

       Plaintiffs-Appellants,

Patricia Brunner,

       Plaintiff,

Joan Casto; Marian Conner; Janet Edwards; Wilma Faulkner; Nancy Katte; Nan Maury; Betty Bethea,

       Plaintiffs-Appellants,

Rachel Epstein; Marguerite Hjalmarson,

       Plaintiffs,

    v.

Wyeth, and its divisions; Wyeth Pharmaceuticals, Inc.; ESI Lederle; Pfizer, Inc.; Pharmacia & Upjohn Company; Pharmacia Corporation; Barr Laboratories, Inc.; Mead Johnson & Company; Greenstone Ltd.; Does 1-10,

       Defendants-Appellees.

-4-

_____

Submitted: September 24, 2009
Filed: January 6, 2010
_____

Before MURPHY, BRIGHT and RILEY, Circuit Judges.
_____

BRIGHT, Circuit Judge.

The plaintiffs, women and next-of-kin of deceased women, sued a number of manufacturers of hormone replacement therapy drugs, asserting the drugs caused breast cancer. The defendants, manufacturers of hormone replacement therapy drugs ("manufacturers"), removed the cases to federal court. The plaintiffs moved to remand to state court on the grounds that complete diversity of citizenship was lacking, thereby depriving the court of subject matter jurisdiction. The district court concluded that the plaintiffs' claims were misjoined to defeat diversity jurisdiction, dropped the non-diverse plaintiffs, and dismissed these cases. Plaintiffs appeal, and we reverse the district court's orders denying plaintiffs' motions to remand and granting the manufacturers' motions to dismiss duplicative cases.

## I. BACKGROUND

### A. Hormone Replacement Therapy

Hormone replacement therapy ("HRT") drugs are used in the treatment of menopausal symptoms. Such symptoms include hot flashes, chills, headache, irritability, and vaginal atrophy. HRT drugs consist of a combination of estrogen and progestin. The Women's Health Initiative (WHI), a group focused on defining the risks and benefits of strategies that could reduce heart disease, cancer, and fractures in post-menopausal women, began studying the effects of HRT drugs in the 1990s.

The WHI enrolled 161,809 post-menopausal women between 50 and 79 years of age into a set of clinical trials.

WHI studied the effect of estrogen plus progestin in 16,608 women with an intact uterus. Women were either assigned a daily dose of estrogen plus progestin or a placebo. In 2002, an independent data and safety monitoring board revealed that the number of cases of breast cancer in the estrogen plus progestin group had crossed the boundary established as a signal of increased risk. The independent board recommended that the trial be ended early based on an increased breast cancer risk. The results of the WHI study were published in The Journal of the American Medical Association. *See Risks and Benefits of Estrogen Plus Progestin in Healthy Postmenopausal Women,* 288 J. Am. Med. Ass'n. 321-333 (2002), *available at* http://jama.ama-assn.org/cgi/content/full/288/3/321.

B.     The Lawsuits

This case concerns three lawsuits. The *Kirkland* suit was brought by 57 women who each alleged injuries resulting from their use of HRT medications. The *Kirkland* plaintiffs alleged they each developed breast cancer after taking HRT drugs that were manufactured, marketed, and sold by one or more of eleven manufacturers. Fourteen *Kirkland* plaintiffs are citizens of the same state as at least one of the manufacturers. Three of those fourteen plaintiffs asserted claims against manufacturers with the same citizenship. For example, Nancy States is a citizen of Pennsylvania, the same state as Wyeth Pharmaceuticals, Inc., a company that manufactured and marketed HRT drugs she took.

The *Jasperson* suit was brought by Rick Jasperson, as trustee of the next-of-kin of six decedents who used HRT drugs. The *Jasperson* plaintiffs alleged that in each case, the next-of-kin sustained injuries when a woman family member developed breast cancer as a result of taking HRT drugs that were manufactured, marketed, and

sold by one or more of six defendants. One of the six decedents, Elizabeth Mendelson, was a citizen of New Jersey, the same state as Pharmacia Corporation, Wyeth, and Pharmacia & Upjohn Company, companies that manufactured and marketed HRT drugs that Mendelson took.

The *Allen* suit was brought by 60 women who also alleged they each developed breast cancer as a result of HRT medications manufactured, marketed, and sold by one or more of eight defendants. Five *Allen* plaintiffs are citizens of the same state as at least one of the defendants. Three of these five plaintiffs asserted claims against manufacturers who were citizens of the same state. For example, Rachel Epstein is a citizen of New York, the same state as Pfizer, a company that manufactured and marketed HRT drugs that she took.

C.    Procedural History

The *Kirkland*, *Jasperson*, and *Allen* plaintiffs filed suits for damages in Minnesota state court in July 2008. In each of the three consolidated cases, the plaintiffs alleged they or a decedent family member had developed breast cancer from taking HRT medications. The plaintiffs asserted state law claims for negligence, strict liability, breach of implied warranty, breach of express warranty, fraud, negligent misrepresentation, and statutory violations of the False and Misleading Advertising Act, the Prevention of Consumer Fraud Act, and the Uniform Deceptive Trade Practices Act.

The manufacturers removed all three cases to the United States District Court for the District of Minnesota. In the manufacturers' removal petitions, they argued diversity jurisdiction existed under the fraudulent misjoinder doctrine. They alleged that the plaintiffs joined their claims together against the manufacturers to defeat diversity jurisdiction. The manufacturers argued that the plaintiffs' claims were fraudulently misjoined, stating that those claims did not arise out of the same

transaction or occurrence, a requirement for joinder under Federal Rule of Civil Procedure 20(a).

The plaintiffs filed motions to remand the cases to state court for lack of subject matter jurisdiction, asserting that complete diversity between the plaintiffs and defendants did not exist. Before the plaintiffs' motions were addressed, the litigation came before the United States Judicial Panel on Multidistrict Litigation ("MDL"). The *Kirkland* and *Jasperson* cases were transferred to the Eastern District of Arkansas and assigned to an MDL judge. Plaintiffs requested that the MDL court rule on their pending motions to remand to state court.

Before the MDL court ruled on the question of remand, on December 19, 2008, the manufacturers moved to dismiss most of the claims brought by the *Kirkland* plaintiffs and all of the claims brought on behalf of the *Jasperson* decedents on the grounds that the plaintiffs' claims were duplicative of earlier filed California claims.[1] Plaintiffs' oppositions to the motions were due on December 30, 2008, and they requested an extension of time to reply to the manufacturers' motions to dismiss.

On December 29, 2008, the court denied plaintiffs' requests for an extension, stating that it "did not grant your Motion for Extension of Time to Respond, because I'm satisfied that you couldn't say anything that would change my mind on the issues involved here." On that same day, the court denied in part plaintiffs' motions to remand the *Kirkland* and *Jasperson* cases to state court, concluding that the plaintiffs were misjoined. The court stated that there was no reason for the joinder of the non-diverse plaintiffs other than to defeat diversity jurisdiction, and explained

> MDL courts have repeatedly held that misjoined plaintiffs will not defeat diversity . . . .

---

[1]The California lawsuits had also been transferred to an MDL court.

-8-

> [E]ven if a non-diverse plaintiff [has] a valid cause of action against a defendant, that plaintiff may not prevent removal based on diversity of citizenship if there is no reasonable basis for the joinder of that non-diverse plaintiff with the other plaintiffs. (Quotations omitted).

Appellants' Add. at 134-35.

The court concluded that the plaintiffs had failed to properly join under Rule 20 because "[t]he only thing common among Plaintiffs is that they took an HRT drug -- but not necessarily the same HRT drug. Plaintiffs are residents of different states and were prescribed different HRT drugs by different doctors, for different lengths of time, in different amounts, and they suffered different injuries." *Id*. at 135.

The court granted four of the *Kirkland* and *Jasperson* plaintiffs' motions to remand because those plaintiffs had asserted claims against a defendant who was from the same state. The court denied 59 *Kirkland* and *Jasperson* plaintiffs' motions to remand because the plaintiffs were not asserting claims against manufacturers from the same state. The court granted the manufacturers' motions to dismiss as to these 59 plaintiffs. The court dropped the 59 plaintiffs from the lawsuit and dismissed their claims, because they duplicated previously-filed California claims.

On December 30, 2008, the plaintiffs moved pursuant to Rule 59(e) to alter or amend the December 29 orders of dismissal. The plaintiffs argued that the court improperly dismissed the cases without giving them an opportunity to respond to the motions, and the court abused its discretion by dismissing the cases rather than staying the Minnesota actions pending disposition of the California cases. The district court denied the Rule 59(e) motions on December 30, 2008.

In February 2009, the United States Judicial Panel on MDL transferred the *Allen* case to the same MDL court for coordinated proceedings with other pending HRT cases. On February 10, 2009, plaintiffs refiled their motions to remand the *Allen*

case to state court. The court denied the motions on that same day, stating that the plaintiffs were improperly joined under Rule 20 and that he could "see no reason for the joinder of the non-diverse plaintiffs other than to defeat diversity jurisdiction." *Id.* at 383. The court granted three of the *Allen* plaintiffs' motions to remand because those women had asserted claims against a manufacturer who was from the same state. The court granted the manufacturers' motions to dismiss as to the remaining 57 plaintiffs. The court dropped the remaining 57 plaintiffs from the lawsuit and dismissed their claims because of their duplicative cases.

As a result of the district court's orders in *Kirkland*, *Jasperson*, and *Allen,* seven plaintiffs' cases were remanded to state court and the remaining 116 plaintiffs were dropped from the litigation and their cases were dismissed.

The dismissed plaintiffs[2] appeal (1) the district court's December 29, 2008, orders and judgments denying plaintiffs' motions to remand to state court and granting defendants' motions to dismiss duplicative cases; and (2) the district court's December 30, 2008, orders on plaintiffs' Rule 59(e) motions to alter or amend the final orders of dismissal. Plaintiffs argue the district court: (1) erred in denying their motions to remand to state court when it adopted the fraudulent misjoinder doctrine; (2) erred by dismissing the plaintiffs from the cases without giving them a reasonable opportunity to be heard; and (3) abused its discretion by refusing to stay the duplicative Minnesota claims pending final resolution of the California claim. We reverse on the first issue, thus we need not address the final two issues.

---

[2]The plaintiffs whose cases were remanded to state court are not parties to these appeals.

## II.    DISCUSSION

On appeal, the plaintiffs argue the district court erred in denying their motions to remand by applying a discredited theory known as "fraudulent misjoinder"[3] when it concluded they were improperly joined to defeat diversity jurisdiction.

"We review the district court's denial of the remand motion de novo." *Menz v. New Holland North America, Inc.*, 440 F.3d 1002, 1004 (8th Cir. 2006); *see also Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007) ("Whether a plaintiff has fraudulently joined a party to defeat diversity jurisdiction is a question of subject matter jurisdiction we review de novo.").

A defendant may remove a state law claim to federal court only if the action originally could have been filed there. *Phipps v. FDIC*, 417 F.3d 1006, 1010 (8th Cir. 2005). Diversity jurisdiction under 28 U.S.C. § 1332 requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants. 28 U.S.C. § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007).

After removal, a plaintiff may move to remand the case to state court, and the case should be remanded if it appears that the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence. *Altimore v. Mount Mercy College*, 420 F.3d 763, 768 (8th Cir. 2005). All doubts about federal jurisdiction should be resolved in favor of remand to state court. *Wilkinson*, 478 F.3d at 963.

---

[3]Some courts refer to this judicially-created doctrine as "procedural misjoinder."

Courts have long recognized fraudulent joinder as an exception to the complete diversity rule. *See* 14B Charles Alan Wright et al., *Federal Practice and Procedure* § 3723, at 788-789 (4th ed. 2009). Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal. *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003). When determining if a party has been fraudulently joined, a court considers whether there is any reasonable basis in fact or law to support a claim against a nondiverse defendant. *Wilkinson*, 478 F.3d at 964.

A more recent, somewhat different, and novel exception to the complete diversity rule is the fraudulent misjoinder doctrine which one appellate court[4] and several district courts[5] have adopted. Fraudulent misjoinder

> occurs when a plaintiff sues a diverse defendant in state court and joins
> a viable claim involving a nondiverse party, or a resident defendant, even
> though the plaintiff has no reasonable procedural basis to join them in

---

[4]Although the Eleventh Circuit is the only federal appellate court to adopt fraudulent misjoinder, *see Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000), the Fifth and Ninth Circuits have acknowledged it, although not expressly adopted it. *See In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002) (citing *Tapscott*, 77 F.3d at 1360) ("[I]t might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction."); *In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002) ("[W]ithout detracting from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction, we do not reach its application in this case."); *California Dump Truck Owners Ass'n v. Cummins Engine Co., Inc.*, 24 Fed. Appx. 727, 729 (9th Cir. 2001) ("For purposes of discussion we will assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs.").

[5]*See, e.g.*, *Coleman v. Conseco, Inc.*, 238 F. Supp. 2d 804 (S.D. Miss. 2002); *Greene v. Wyeth*, 344 F. Supp. 2d 674 (D. Nev. 2004); *Smith v. Nationwide Mut. Ins. Co.*, 286 F. Supp. 2d 777 (S.D. Miss. 2003).

one action because the claims bear no relation to each other. In such cases, some courts have concluded that diversity is not defeated where the claim that destroys diversity has "no real connection with the controversy" involving the claims that would qualify for diversity jurisdiction.

Ronald A. Parsons, Jr., *Should the Eighth Circuit Recognize Procedural Misjoinder?*, 53 S.D. L. Rev. 52, 57 (2008).

The Eleventh Circuit first considered and adopted the fraudulent misjoinder doctrine in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996). *Tapscott* concerned a putative class action filed in Alabama state court. *Id.* at 1355. In the initial complaint, one Alabama plaintiff sued four defendants, one of whom was an Alabama resident. *Id.* The first amended complaint added sixteen named plaintiffs and twenty-two named defendants. *Id.* The plaintiffs then amended their complaint again, naming four additional plaintiffs, all Alabama residents, and three named defendants. *Id.* One of those defendants, Lowe's Home Centers, was a North Carolina resident. *Id.*

The initial complaint and first amended complaint alleged fraud violations arising from the sale of automobile service contracts. *Id.* The second amended complaint alleged fraud violations arising from the sale of extended service contracts in connection with the sale of retail products. *Id.* The result of the amended complaints and joinder under Rule 20 was to create two distinct groups of plaintiffs and defendants: the non-diverse "automobile class" and the diverse "merchant class." *Id.* at 1359-60, n.16.

Lowe's Home Centers removed the case to federal court and moved to sever the claims against it from the claims against the automobile class defendants. *Id.* at 1355. The plaintiffs moved to remand to state court for lack of federal subject matter jurisdiction. *Id.* The district court granted Lowe's Home Centers' motion to sever

and denied the plaintiffs' motion to remand to state court, holding that there was "no allegation of joint liability between Lowe's and any other defendant and no allegation of conspiracy" and "there was an improper and fraudulent joinder, bordering on a sham." *Id.* at 1360 (internal quotations omitted).

On appeal, the Eleventh Circuit Court of Appeals affirmed the district court's denial of the plaintiffs' motion to remand. *Id.* The court held there was misjoinder under Rule 20 because there was "no real connection" between the two sets of alleged transactions. *Id.* The court reasoned that the alleged transactions concerning the automobile class were wholly distinct from the transactions involving the merchant class. *Id.* The only similarity between the two classes was that both classes violated particular fraud provisions in the Alabama state code. *Id.* The Eleventh Circuit cautioned that "mere misjoinder" is not fraudulent misjoinder. *Id.* However, the plaintiffs' joinder of these two groups of unrelated defendants was "so egregious as to constitute fraudulent joinder." *Id.* Therefore, the Eleventh Circuit reasoned that the district court did not err in concluding the plaintiffs attempted to defeat diversity jurisdiction by misjoinder. *Id.*

Courts' reactions to *Tapscott* have been mixed. Some district courts have adopted the doctrine as a means of ensuring defendants their statutory right of removal to the federal courts and precluding plaintiffs from preventing removal to federal court. *See, e.g.*, *In re Diet Drugs*, No. 98-20478, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999) (unreported) (explaining that plaintiffs' egregious misjoinder "wrongfully deprives Defendants of their right of removal."); *Reed v. American Medical Sec. Group, Inc.*, 324 F. Supp. 2d 798, 805 (S.D. Miss. 2004) (adopting the fraudulent misjoinder doctrine because "diverse defendants ought not be deprived of their right to a federal forum by such a contrivance as this."). *See also* Laura J. Hines & Steven S. Gensler, *Driving Misjoinder: The Improper Party Problem in Removal Jurisdiction*, 57 Ala. L. Rev. 779, 825 (2006) (explaining that fraudulent misjoinder protects access to federal courts).

Other courts have criticized *Tapscott*, arguing that questions of joinder under state law do not implicate federal subject matter jurisdiction, federal jurisdiction is to be narrowly construed, and the fraudulent misjoinder doctrine has created an unpredictable and complex jurisdictional rule. *See, e.g.*, *Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004) (rejecting fraudulent misjoinder because "the last thing the federal courts need is more procedural complexity."); *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 851 (S.D. Ill. 2006) (holding that *Tapscott* is an improper expansion of federal diversity jurisdiction, and misjoinder should be resolved by a state court); 14B Charles Alan Wright et al., *Federal Practice and Procedure* § 3723, at 876 (4th ed. 2009) (explaining that fraudulent misjoinder adds "a level of complexity – and additional litigation – to a federal court's decision regarding removal.").

The Eighth Circuit Court of Appeals has not yet considered the fraudulent misjoinder doctrine. *See* Parsons, *supra*, at 60. We make no judgment on the propriety of the doctrine in this case, and decline to either adopt or reject it at this time. Rather, on the record in this case, we conclude that even if we adopted the doctrine, the plaintiffs' alleged misjoinder in this case is not so egregious as to constitute fraudulent misjoinder.

Rule 20(a)(1), Federal Rules of Civil Procedure, allows multiple plaintiffs to join in a single action if (i) they assert claims "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (ii) "any question of law or fact common to all plaintiffs will arise in the action."[6] In

---

[6]Whether the federal or state rules on joinder apply has also received conflicting results post-*Tapscott*. *Compare Tapscott*, 77 F.3d at 1360 (applying, without analysis, the federal rules of joinder to determine that the plaintiffs egregiously misjoined the defendants), *and Brooks v. Paulk & Cope, Inc.*, 176 F. Supp. 2d 1270, 1274 (M.D. Ala. 2001) (applying the Federal Rules of Civil Procedure), *with Osborn*, 341 F. Supp. 2d at 1128 ("[M]ost courts looking at this issue have applied the state rule. This seems the better choice since the question is whether the parties were misjoined in state

construing Rule 20, the Eighth Circuit has provided a very broad definition for the term "transaction." As stated in *Mosley v. General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974):

> "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.
>
> Accordingly, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

*Id.* at 1333 (citations omitted); *see also* 7 Charles A. Wright et al., *Federal Practice and Procedure*, § 1653, at 415 (3d ed. 2001) (explaining that the transaction/occurrence requirement prescribed by Rule 20(a) is not a rigid test and is meant to be "read as broadly as possible whenever doing so is likely to promote judicial economy.").

After considering the Rule 20 joinder standards, we conclude that the manufacturers have not met their burden of establishing that plaintiffs' claims are

---

court."), *and Asher v. Minnesota Mining and Mfg. Co.*, No. 04CV522KKC, 2005 WL 1593941, at \*6 (E.D. Ky. June 30, 2005) (unreported) (stating that more courts apply state procedural rules). However, we decline to address this choice of law issue because the standards for joinder under Fed. R. Civ. P. 20 and Minn. R. Civ. P. 20.01 are identical in all significant respects, and application of the state joinder rules does not affect our analysis. Therefore, for purposes of this case only, we apply the federal rules in addressing the misjoinder allegation.

egregiously misjoined.[7] Plaintiffs' claims arise from a series of transactions between HRT pharmaceutical manufacturers and individuals that have used HRT drugs. Plaintiffs allege the manufacturers conducted a national sales and marketing campaign to falsely promote the safety and benefits of HRT drugs and understated the risks of HRT drugs. Plaintiffs contend their claims are logically related because they each developed breast cancer as a result of the manufacturers' negligence in designing, manufacturing, testing, advertising, warning, marketing, and selling HRT drugs. Some of the plaintiffs allege to have taken several HRT drugs made by different manufacturers.

Furthermore, given the nature of the plaintiffs' claims, this litigation is likely to contain common questions of law and fact. *See* Hines & Gensler, *supra*, at 822 ("When plaintiffs join together to sue a defendant based on the purchase of a common product or having engaged in a common transaction, it seems rather clear that their claims will involve some common question of law or fact."). One such common question might be the causal link between HRT drugs and breast cancer. Causation for all of the plaintiffs' claims will likely focus on the 2002 WHI study suggesting a link between HRT drugs and breast cancer and whether the manufacturers knew of the dangers of HRT drugs before the publication of that study.

Based on the plaintiffs' complaints, we cannot say that their claims have "no real connection" to each other such that they are egregiously misjoined. *See Tapscott*, 77 F.3d at 1371. This is unlike *Tapscott* where the alleged transactions concerning the automobile class were wholly distinct from the transactions involving the merchant class and there was "no real connection" between the two sets of transactions. *Id.* Here, there may be a palpable connection between the plaintiffs'

---

[7]We observe that the district court determined that removal was proper because the plaintiffs failed to meet the requirements of Fed. R. Civ. P. 20(a). But it was the manufacturers' burden as the removing party to prove that federal jurisdiction exists. *See Altimore*, 420 F.3d at 768.

-17-

claims against the manufacturers as they all relate to similar drugs and injuries and the manufacturers' knowledge of the risks of HRT drugs.

Furthermore, the manufacturers have presented no evidence that the plaintiffs joined their claims to avoid diversity jurisdiction. "[T]he majority of courts demand more than simply the presence of nondiverse, misjoined parties, but rather a showing that the misjoinder reflects an egregious or bad faith intent on the part of the plaintiffs to thwart removal." Hines & Gensler, *supra*, at 803. Without any evidence that the plaintiffs acted with bad faith, we decline to conclude they egregiously misjoined their claims.

We clarify that we make no judgment on whether the plaintiffs' claims are *properly* joined under Rule 20. *See Moore v. SmithKline Beecham Corp.*, 219 F. Supp. 2d 742, 746 (N.D. Miss. 2002) ("Of course, the court is not faced with and expresses no opinion as to the issue of whether joinder is proper in this case; rather, the court's task is solely to determine whether the Plaintiffs are so egregiously misjoined that fraudulent joinder has taken place."). It may be that the plaintiffs' claims are not properly joined, and it has been suggested that the proper procedure may be for the manufacturers to argue that to the state court.[8] *See Johnson v. Glaxo Smith Kline*, 214 F.R.D. 416, 421 (S.D. Miss. Mar. 29, 2002) (holding that even if defendants are correct that plaintiffs' claims are improperly joined, the issue of "mere misjoinder" is more appropriately addressed to the state district court). However, it

---

[8]Considering the uncertainty surrounding the propriety of the joinder of plaintiffs' claims, the preferable course of action may have been for defendants to challenge the misjoinder in state court before it sought removal. *See* 14B Charles A. Wright et al., *Federal Practice and Procedure* § 3723, at 658 (3d ed. 1998) ("[T]he fraudulent-joinder doctrine and its allied jurisprudence adds a further level of complexity – and additional litigation – to a federal court's decision regarding removal jurisdiction . . . . In many situations this confusion easily could be avoided by having the removing party challenge the misjoinder in state court before seeking removal.").

is not clear that the joinder is so egregious and grossly improper under the broadly-interpreted joinder standards that it warrants an adoption and application of the fraudulent misjoinder doctrine. *See Walton v. Tower Loan of Miss.*, 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004) ("[F]or *Tapscott* to be applicable, this court would be required to find a level of misjoinder that was not only improper, but grossly improper . . . ."). Therefore, absent evidence that plaintiffs' misjoinder borders on a "sham," *see Tapscott*, 77 F.3d at 1360, we decline to apply *Tapscott* to the present case.

## III. CONCLUSION

Because the joinder of claims in this case does not constitute egregious misjoinder, complete diversity does not exist and the district court erred in denying plaintiffs' motions to remand to state court. We reverse the district court's orders and judgments granting in part and denying in part plaintiffs' motions to remand to state court and instruct the district court to remand all of the cases to Minnesota state court for lack of diversity jurisdiction. Because the district court lacked jurisdiction to act in this matter, we also vacate the district court's orders granting the manufacturers' motions to dismiss the duplicative cases.[9]

------------------------------------------------

[9] We need not consider plaintiffs' remaining claims because resolution of the fraudulent misjoinder issue renders resolution of any other claims unnecessary.