# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-2124

———————

John E. Knudson,         *
                                *

       Plaintiff - Appellant,      *

                                *   Appeal from the United States

    v.                             *   District Court for the

                                *   Western District of Missouri.

Systems Painters, Inc.; Systems Painters * 

& Drywall, LP; Systems Painters &     *

Drywall II, LP,                    *

                                *

       Defendants - Appellees.     *

———————

Submitted: January 11, 2011
Filed: March 10, 2011

———————

Before MURPHY, BYE, and MELLOY, Circuit Judges.

———————

MELLOY, Circuit Judge.

John E. Knudson alleges he suffered lung injuries while working on a construction site after he inhaled a significant amount of paint particulate. To recover damages, Knudson brought state-law claims in an action in Missouri state court against Randy Long, Systems Painters, Inc., Systems Painters & Drywall, LP, and Systems Painters & Drywall II, LP. (We refer to the last three defendants as a single entity, "Systems Painters.") Knudson alleges that Long was a co-employee who supervised him at the construction site and that Systems Painters produced the paint

particulate at issue.  Knudson and Systems Painters agree that Knudson and Long are Missouri citizens and that Systems Painters is a Texas citizen.[1]

The Missouri district court dismissed Knudson's claim against Long, finding that Missouri's workers' compensation laws provided Long with immunity.  Systems Painters then removed the action to the U.S. District Court for the Western District of Missouri.  Knudson sought remand, arguing that Long's presence prevented diversity of citizenship.  The court denied Knudson's remand motion after finding that he had fraudulently joined Long.  However, the court proceeded no further in resolving Knudson's claims against Systems Painters.  Instead, the court certified its order denying remand for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Knudson applied for an interlocutory appeal, we granted his application, and we now reverse.

## I. Background

Knudson is a former employee of Long Refrigeration, Inc., a Missouri corporation.  In 2003, Wal-Mart decided to build stores in Ava and Ozark, Missouri.  Wal-Mart awarded the construction contracts to two separate companies, with each company hiring Long Refrigeration to install heating, ventilating, and air-conditioning ("HVAC") systems for each of the stores.  Additionally, each company hired Systems Painters to paint the stores' interiors.

Long Refrigeration began installing the HVAC systems in December of 2003 or 2004.  During this same time, Systems Painters began painting.  Knudson claims that Systems Painters was supposed to apply its paints and coatings only in "well-ventilated area[s]" and that individuals who were working nearby were supposed to

---

[1] Because of our disposition of the case, we do not need to decide whether the parties' agreement on this issue is sufficient.  See Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir. 2009) (noting that parties cannot waive or consent to subject-matter jurisdiction).

have proper equipment to prohibit the inhalation of paint particulate. Knudson claims, however, that the construction sites were "unventilated" and that his equipment did not effectively prevent the inhalation of paint particulate. Specifically, Knudson claims Systems Painters covered the openings of the stores with plastic "to minimize the availability of fresh air" and then used heaters to apply the paint at an elevated temperature. These actions "essentially shrink-wrapped" the stores, according to Knudson. As a result, the paint particulate in the air was so thick that Knudson and others who were installing the HVAC systems would "have difficulty seeing what they were working on," would "leave the job site completely coated" in paint, and would have "difficulty breathing."

While working on the HVAC installations, Knudson claims he was "operating under the direct management and control" of Long. Knudson claims he and other Long Refrigeration employees told Long that they were having difficulty breathing and working in the stores as a result of the paint particulate in the air. In response, according to Knudson, Long "demanded" that Knudson and the other employees "get into the [stores] and complete the HVAC contract" because Long Refrigeration did not want to pay any penalties for failing to complete the HVAC systems on time. Long provided the employees with masks, but Knudson claims these were "cheap and inadequate" and became "so clogged with particulate matter [that the employees] would have to remove them in order to be able to breath at all." As a result, Knudson had to inhale paint particulate. According to Knudson, this caused "severe, permanent, and disabling injury to his lungs" and "a severe loss of lung capacity" that has "rendered [him] permanently and totally disabled from any gainful employment."

On August 25, 2005, Knudson filed a claim for his lung injuries with Missouri's Division of Workers' Compensation. On July 1, 2008, Knudson filed a suit against Long and Systems Painters in Missouri state court. Knudson claimed that the conduct of both Long and Systems Painters caused his lung injuries. Missouri's workers' compensation laws ordinarily immunize co-employees like Long from negligence

-3-

liability for failing to maintain a safe working environment, but co-employees may be liable for damages caused by "affirmative acts of negligence" outside the scope of an employer's responsibility to provide a safe workplace. Thus, Knudson alleged that Long committed affirmative acts of negligence by providing inadequate breathing masks and by instructing him to continue installing the HVAC systems despite knowing that the construction sites were very poorly ventilated. Knudson claimed these actions were "deliberate[], intentional[], and in conscious disregard for [his] safety."

On October 14, 2008, Long filed a motion to dismiss, arguing that he was immune from suit because Knudson's allegations were insufficient to establish that Long had committed an affirmative act of negligence. On November 5, the Missouri district court granted the motion.

On December 4, 2008, Systems Painters removed the case to the U.S. District Court for the Western District of Missouri. On December 29, Knudson filed a motion to remand, arguing that because Long is a Missouri citizen, "there [was] not complete diversity of citizenship at the time of the filing of this matter in [Missouri state court]." On April 5, 2009, the district court issued an order denying Knudson's motion to remand. The court found that it had original jurisdiction based upon diversity of citizenship because Knudson had fraudulently joined Long.

In this interlocutory appeal, Knudson argues that the district court erred in denying his motion to remand because (1) Systems Painters's notice of removal was not timely and (2) the district court lacked original jurisdiction over this case.

## II. Discussion

### A. Whether Systems Painters's Removal Was Timely

Knudson first argues that the district court erred in denying his remand motion because Systems Painters's notice of removal was not timely. The removal statutes provide a thirty-day deadline by which a defendant must file a notice of removal. 28 U.S.C. § 1446(b). The event that triggers the running of this thirty-day deadline depends upon whether "the case stated by the initial pleading" is removable. Id. Both parties agree that this case, as "stated by the initial pleading," was not removable. Thus, the running of the thirty-day deadline was triggered when—and if—Systems Painters received "through service or otherwise, . . . a copy of an amended pleading, motion, order, or other paper from which it may first [have been] ascertained that the case is one which is or has become removable." Id.

The district court ruled that Systems Painters's notice of removal was timely, and we review this ruling de novo. Lovern v. Gen. Motors Corp., 121 F.3d 160, 161 (4th Cir. 1997).

On appeal, Knudson argues that when Systems Painters received Knudson's complaint on July 1, 2008, it could have ascertained that the case was removable because it could have ascertained that diversity of citizenship existed[2] and that the amount-in-controversy requirement was met. Systems Painters argues that it could not ascertain whether Knudson's action satisfied the amount-in-controversy requirement until November 13, 2008, when it received records from Missouri's

---

[2] According to Knudson, assuming arguendo that he fraudulently joined Long, Systems Painters could have ascertained this by looking at his complaint. Consequently, according to Knudson, Systems Painters could have ascertained by looking at Knudson's complaint that there was diversity of citizenship among the non-fraudulently joined parties.

Department of Workers' Compensation which quantified some of Knudson's alleged damages. In response, Knudson argues that even though his complaint did not explicitly state that the case met the amount-in-controversy requirement, Systems Painters had to "glean from the general allegations of damages [in his complaint] whether a jury could conceivably render a verdict in excess of $75,000." Knudson argues that since he alleged in his complaint that he suffered permanent lung damage and that he will be unable to be gainfully employed in the future, it is apparent that a jury could conceivably render a verdict in his favor in excess of $75,000.

This case raises a similar issue to the one we faced in In re Willis, 228 F.3d 896 (8th Cir. 2000). In that case, a Missouri plaintiff brought a personal-injury action against a Virginia defendant in Missouri state court. Id. at 897. The plaintiff sought damages for pain and suffering, permanent disability, and wage loss, but the plaintiff's complaint did not explicitly disclose the amount of damages sought. The defendant removed the case to federal court. The plaintiff filed a motion to remand, arguing that the defendant's removal was untimely because he filed his removal notice more than thirty days after he received a copy of the plaintiff's complaint. Id. at 897.

We disagreed that the defendant's removal was untimely and stated, "We find the thirty-day time limit of section 1446(b) begins running upon receipt of the initial complaint only when the complaint explicitly discloses the plaintiff is seeking damages in excess of the federal jurisdictional amount." Id. at 897; see also Moltner v. Starbucks Coffee Co., 624 F.3d 34, 38 (2d Cir. 2010) (approvingly citing In Re Willis and stating that the Second Circuit "join[s] the Eighth Circuit . . . in holding that the removal clock does not start to run until the plaintiff serves the defendant with a paper that explicitly specifies the amount of monetary damages sought"). This rule, we noted, "'promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know.'" In re Willis, 228 F.3d at 897 (quoting Chapman v. Powermatic, Inc., 969 F.2d 160, 163 (5th Cir. 1992)).

Thus, in In re Willis, we rejected Knudson's argument that Systems Painters had to "glean" the amount in controversy from Knudson's complaint.  See also Moltner, 624 F.3d at 37 (rejecting argument that the "removal clock runs from the service of the complaint, even where the complaint does not specify the amount of monetary damages sought, when the defendant can reasonably discern from the complaint that the damages sought will meet the amount-in-controversy requirement").  Knudson notes that Missouri Rule of Civil Procedure 55.19 prohibits him from explicitly stating the amount in controversy in his complaint.  However, the plaintiffs in In re Willis and Moltner faced the same restriction.  Moreover, despite this restriction, there were other ways Knudson could have triggered the running of § 1446(b)'s thirty-day deadline.  See 28 U.S.C. § 1446(b) (noting that the defendant's receipt, "through service or otherwise, of a copy of an amended pleading, motion, order, or other paper" triggers the running of the thirty-day deadline).

Therefore, since Knudson's complaint did not explicitly state the amount in controversy, Knudson's complaint did not trigger the running of § 1446(b)'s thirty-day deadline.  Knudson points to no other event that triggered the running of the deadline that would have made Systems Painters's notice of removal untimely.[3]  Thus, the district court did not err in finding that Systems Painters's removal notice was timely.

B. Whether the District Court Had Original Jurisdiction

Knudson next argues that the district court erred in denying his remand motion because the court lacked jurisdiction over the case.  Section 1441(a) allows a defendant to remove an action pending in state court to a federal district court that has "original jurisdiction" over the action.  The district court ruled that it had original

---

[3] We express no opinion regarding whether Systems Painters's receipt of records from Missouri's Division of Workers' Compensation on November 13, 2008, triggered the running of § 1446(b)'s thirty-day deadline.  Even if it did, Systems Painters filed its removal notice well within thirty days of this date.

jurisdiction over the case, so it denied Knudson's motion to remand. We review de novo a district court's denial of a motion to remand for lack of original jurisdiction. Kirkland v. Wyeth (In re Prempro Prods. Liab. Litig.), 591 F.3d 613, 619 (8th Cir. 2010). Systems Painters bears the burden of establishing that the district court had original jurisdiction by a preponderance of the evidence. Id. at 620. "All doubts about federal jurisdiction should be resolved in favor of remand to state court." Junk v. Terminix Int'l Co., 628 F.3d 439, 446 (8th Cir. 2010) (internal quotation marks omitted).

Systems Painters argues that the district court had original jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1). That statute vests district courts with "original jurisdiction" over civil cases where the amount in controversy exceeds $75,000 and where the case is between citizens of different states. § 1332(a)(1). "In the case of a removed action, diversity [of citizenship] must exist both when the state petition is filed and when the petition for removal is filed."[4] Ryan ex. rel. Ryan v. Schneider Nat'l Carriers, Inc., 263 F.3d 816, 819 (8th Cir. 2001) (citing Koenigsberger v. Richmond Silver Mining Co., 158 U.S. 41, 49–50 (1895)); see also Gibson v. Bruce, 108 U.S. 561, 563 (1883); MacGinnitie v. Hobbs Grp., LLC, 420 F.3d 1234, 1239–40 (11th Cir. 2005); Strotek Corp. v. Air Transp. Assoc. of Am., 300 F.3d 1129, 1131–32 (9th Cir. 2002); Kanzelberger v. Kanzelberger, 782 F.2d 774, 776–77 (7th Cir. 1986). According to the Supreme Court, the rationale for this time-of-filing rule is to prevent defendants from manipulating jurisdiction by changing their citizenship after the plaintiff has filed its suit in state court. Gibson, 108 U.S. at 563. As applied to this case, this rule would mean that the district court did not have original jurisdiction pursuant to § 1332(a)(1), because at the time Knudson filed his complaint in Missouri state court, Long's citizenship destroyed diversity of citizenship.

---

[4] Federal courts apply a similar time-of-filing rule when the plaintiff initially files its suit in federal district court rather than state court. Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991).

There are at least two exceptions to this time-of-filing rule, however. First, pursuant to <u>Powers v. Chesapeake & Ohio Ry. Co.</u>, if the plaintiff voluntarily dismisses the diversity-destroying defendant, a defendant may then be able to remove the case. 169 U.S. 92, 101–02 (1898); <u>see</u> <u>In re Iowa Mfg. Co.</u>, 747 F.2d 462, 463 (8th Cir. 1984) (citing <u>Powers</u> and noting the existence of the exception); <u>see also</u> <u>McCord v. Minn. Mut. Life Ins. Co. (In re Minn. Mut. Life Ins. Co. Sales Practice Litig.)</u>, 346 F.3d 830, 834 (8th Cir. 2003) (affirming a district court's finding that it had original jurisdiction over a removed case where the plaintiff voluntarily dismissed the diversity-destroying defendant). The rationale for this exception is not entirely clear, but commentators suggest that when a plaintiff voluntarily dismisses a diversity-destroying defendant, the justification for the time-of-filing rule is not present. 14B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 3723 (4th ed. 2009). This is because a defendant generally has no control over whether the plaintiff voluntarily dismisses another defendant, so there is no risk that a defendant has changed its citizenship to manipulate jurisdiction.[5]

The second exception to the time-of-filing rule is the fraudulent-joinder exception. Under this exception, a plaintiff cannot defeat a defendant's "right of removal" by fraudulently joining a defendant who has "no real connection with the controversy." <u>Chesapeake & Ohio Ry. Co. v. Cockrell</u>, 232 U.S. 146, 152 (1914); <u>see also</u> <u>Simpson v. Thomure</u>, 484 F.3d 1081, 1083 (8th Cir. 2007) ("[T]he right of an out-of-state defendant to remove a diversity suit to federal court 'cannot be defeated by a fraudulent joinder of a resident defendant.'" (quoting <u>Wilson v. Republic Iron & Steel Co.</u>, 257 U.S. 92, 97 (1921))). The purpose of this exception is to strike a balance between the plaintiff's right to select a particular forum and the defendant's right to remove the case to federal court. Wright & Miller, <u>supra</u>, § 3723.

---

[5] Commentators have offered other rationales for the voluntary-dismissal exception. <u>See e.g.</u>, E. Farish Percy, <u>Making a Federal Case of It: Removing Civil Cases to Federal Court Based on Fraudulent Joinder</u>, 91 Iowa L. Rev. 189, 207–11 (2005) (discussing several potential rationales).

In this case, Systems Painters argues that both exceptions to the time-of-filing rule apply. The district court ruled that the voluntary-dismissal exception did not apply, but that the fraudulent-joinder exception did. We next consider whether these rulings were correct.

### i. The Voluntary-Dismissal Exception

Systems Painters first argues that Powers's voluntary-dismissal exception to the time-of-filing rule applies in this case. The district court rejected this argument, finding that Long's dismissal was "undoubtedly involuntary" as to Knudson. While Systems Painters concedes that the dismissal of Long was "initially involuntary," it argues that Knudson "transformed" this dismissal into a voluntary one by not seeking, inter alia, a writ of mandumus or a certification of the order for interlocutory appeal.

Generally, courts have suggested that a dismissal is voluntary as to a plaintiff only if the plaintiff "initiated the dismissal." Poulos v. Naas Foods, Inc., 959 F.2d 69, 72 n.3 (7th Cir. 1992) (citing Self v. Gen. Motors Corp., 588 F.2d 655, 658 (9th Cir. 1978) (noting that pursuant to Powers and Whitcomb v. Smithson, 175 U.S. 635 (1900), "only a voluntary act of the plaintiff could bring about removal to federal court")). When the diversity-destroying defendant initiates its own dismissal, and when the court's order is against the will of the plaintiff, the dismissal is not voluntary. Whitcomb, 175 U.S. at 637. In this case, Long filed a motion to be dismissed from the case, and Knudson filed a memorandum in opposition to Long's motion. Thus, the court's order dismissing Long was initiated by Long, and it was entered against Knudson's will. Therefore, the court's dismissal of Long was involuntary—at least initially—as to Knudson.

The Second Circuit has held that a plaintiff's post-dismissal action (or inaction) can transform an initially involuntary dismissal into a voluntary one. In Quinn v. Aetna Life & Cas. Co., the court held that a plaintiff's failure to appeal a state court's order dismissing diversity-destroying defendants upon the diversity-destroying

-10-

defendants' motion could transform an involuntary dismissal into a voluntary one. 616 F.2d 38, 40 n.2 (2d Cir. 1980). Contra Insinga v. LaBella, 845 F.2d 249, 252 (11th Cir. 1988) (rejecting Quinn's holding that a plaintiff's failure to timely appeal a dismissal order makes an initially involuntary dismissal a voluntary one). However, it is unclear whether the plaintiff in Quinn took steps to oppose the diversity-destroying defendants' motion prior to the state court's order, as Knudson did. Moreover, unlike the plaintiff in Quinn, Knudson filed a timely appeal of the order dismissing Long, although the Missouri Court of Appeals dismissed the appeal as interlocutory.[6] Thus, since this case is distinguishable from Quinn, and since Systems Painters cites no other authority for the proposition that a plaintiff's actions can transform an involuntary dismissal into a voluntary one, Systems Painters has failed to prove that Knudson voluntarily dismissed Long for purposes of the Powers exception.

## ii. The Fraudulent-Joinder Exception

Systems Painters next argues that the fraudulent-joinder exception to the time-of-filing rule applies in this case. The district court agreed, and Systems Painters urges us to affirm this finding.

## a. Determining the Proper Fraudulent-Joinder Standard

The first issue we must consider is what standard we should apply to determine whether Knudson fraudulently joined Long. Ordinarily, to prove that a plaintiff fraudulently joined a diversity-destroying defendant, we have required a defendant seeking removal to prove that the plaintiff's claim against the diversity-destroying

---

[6] Generally, orders like the one dismissing Long are not appealable because they do not dispose of "all the issues for all parties in the case" such that nothing is left for future determination. Mo. Sup. Ct. R. 74.01(b); Fleahman v. Fleahman, 25 S.W.3d 162, 164 (Mo. Ct. App. 1999).

-11-

defendant has "no reasonable basis in fact and law." Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003) (internal quotation marks omitted).[7] In spite of this rule, Systems Painters argues that because the Missouri district court dismissed Long for "lack of subject matter jurisdiction," we should automatically find that Knudson fraudulently joined Long. Alternatively, Systems Painters cites Simpson v. Thomure, 484 F.3d 1081 (8th Cir. 2007) and argues that we should apply a Rule 12(b)(6) standard—rather than Filla's standard—to determine whether Knudson fraudulently joined Long.[8]

We first reject Systems Painters's argument that the Missouri state court's dismissal of Long requires us to find that Knudson fraudulently joined him. In the Eleventh Circuit case of Insinga v. LaBella, a plaintiff sued a non-diverse defendant and a diverse defendant in state court. 845 F.2d at 250. The state court dismissed the non-diverse defendant "based on sovereign immunity," and pursuant to state law, such determinations were jurisdictional. Id. at 254. In deciding whether the defendant's removal was proper, the court stated,

> For all intents and purposes, a trial court's finding that it lacks jurisdiction over a resident defendant is akin to a finding of fraudulent joinder of that defendant in that it involves a determination by the court that the resident defendant was never properly before the court, rather

---

[7] In Simpson v. Thomure, 484 F.3d 1081, 1084 n.2 (8th Cir. 2007), we questioned our jurisdiction in Filla. However, we applied the Filla standard in other cases prior to Simpson. See e.g., Menz v. New Holland N. Am., Inc., 440 F.3d 1002, 1004 (8th Cir. 2006). And, since Simpson, we have continued to apply the Filla standard. See Junk, 628 F.3d at 446. Thus, the Filla standard remains good law in this circuit.

[8] It is somewhat unclear what standard the district court applied in determining that Knudson fraudulently joined Long. The court did not cite Filla or allude to the Filla standard. Instead, the court analyzed Knudson's allegations in his pleadings. Thus, it seems the court applied something akin to a Rule 12(b)(6) standard.

> than a determination that the court had jurisdiction of that defendant but
> that the case against him, although not frivolous, was not meritorious.

Id. (footnote omitted). Systems Painters argues that, under Insinga, a state court's dismissal of a non-diverse defendant for lack of jurisdiction requires a federal court to find that the plaintiff fraudulently joined that defendant. Since the Missouri district court dismissed Long for "lack of subject matter jurisdiction," Systems Painters argues that we should apply this per se rule and find that Knudson fraudulently joined Long.

We decline to apply a per se rule based upon Insinga for at least three reasons. First, the court in Insinga seemed to incorrectly suggest that whether a plaintiff has fraudulently joined a defendant is a question of state law. See id. ("In order to sustain a fraudulent joinder, a *state court must find* either that there was no possibility that the plaintiff could prove a cause of action against the resident defendant or that the plaintiff fraudulently pled jurisdictional facts . . . ." (emphasis added)). Although the question of whether a plaintiff has fraudulently joined a defendant requires a close analysis of state law, this question is ultimately one of federal law. See Poulos, 959 F.2d at 73 n.4 (noting that federal courts are not bound by a state-court judgment when deciding whether a plaintiff fraudulently joined a defendant). Second, the Insinga court's suggestion that a per se rule would be appropriate was merely dictum. See Insinga, 845 F.2d at 254 n.4 ("We do not mean to imply that the [diversity-destroying defendant] was fraudulently joined in this case, nor do we need to make that determination in light of our disposition of the case."). Finally, since Long's dismissal, the Missouri Supreme Court has clarified that a dismissal due to a defendant's immunity under the state's workers' compensation laws is not a dismissal for lack of jurisdiction.[9] See McCracken v. Wal-Mart Stores E., LP, 298 S.W.3d 473,

---

[9] Systems Painters contends that McCracken applies only prospectively. Prior to McCracken, defendants seeking immunity under the state's workers' compensation laws could file a motion for lack of subject-matter jurisdiction at any time. In McCracken, the Missouri Supreme Court held that such a defense was waived unless asserted as an affirmative defense. The court stated, however, that "[b]ecause recent

-13-

477 (Mo. 2009) (en banc). Thus, the rationale for <u>Insinga</u>'s per se rule (to the extent <u>Insinga</u>, in fact, created one) is not present here. For these reasons, we decline Systems Painters's request to find that Knudson fraudulently joined Long solely because the Missouri district court dismissed him due to immunity provided by the state's workers' compensation laws.

We also reject Systems Painters's argument that <u>Simpson</u> requires us to apply a Rule 12(b)(6) standard—rather than the <u>Filla</u> standard—to determine whether Knudson's fraudulently joined Long. In <u>Simpson</u>, a Missouri plaintiff was injured in the course of her employment while operating a power press. 484 F.3d at 1083. She brought an action in Missouri state court against the diverse power-press manufacturer and her non-diverse workplace supervisor. The manufacturer removed the case to federal court. The plaintiff sought remand on the basis of her supervisor's citizenship. Although the plaintiff was aware that Missouri's workers' compensation laws normally immunize co-workers for workplace negligence, the plaintiff argued that her claim met the same exception to this rule that Knudson argues applies in this case. The district court, however, ruled that the exception was not met, denied remand, and held that the plaintiff fraudulently joined her supervisor. Moreover, since the plaintiff could not state a claim against her supervisor, the court dismissed the supervisor pursuant to Rule 12(b)(6). Four months later, the remaining parties settled, so the court entered final judgment in the case. <u>Id.</u> at 1084.

On appeal, rather than applying the <u>Filla</u> standard to consider whether the plaintiff had fraudulently joined her supervisor, we considered whether the federal district court had properly ruled on the supervisor's Rule 12(b)(6) motion. This

_____

cases erroneously suggested that the [Workers' Compensation Law]'s applicability could be raised by filing a motion to dismiss for lack of subject matter jurisdiction, . . . , this rule will be applied prospectively only." <u>McCracken</u>, 298 S.W.3d at 479. By our reading, the only aspect of <u>McCracken</u> that applies prospectively is the requirement that a defendant assert its immunity under the state's workers' compensation law as an affirmative defense.

-14-

analysis was warranted, we explained, because of the "present procedural posture of the case." Id. We stated,

> At this time, final judgment has been entered, so there is nothing to remand to state court *unless* the district court's Rule 12(b)(6) dismissal of [plaintiff's] claim against [the supervisor] is reversed. *If* that claim is revived, remand will follow automatically because [plaintiff and her supervisor], the only remaining defendant, are citizens of the same state. Thus, the significant issue on appeal is whether the district court erred in dismissing the claim against [the supervisor] on the merits.

Id. We then held that the district court did not err in dismissing plaintiff's claim against her supervisor pursuant to Rule 12(b)(6). Id. at 1086.

Thus, in Simpson, we reviewed the district court's ruling on the supervisor's Rule 12(b)(6) claim, not the district court's ruling on the diverse power-press manufacturer's claim that the plaintiff fraudulently joined the supervisor. The "procedural posture" of the case—not the fact that the plaintiff may have fraudulently joined a party who enjoyed immunity under the state's workers' compensation laws—justified the analysis in Simpson. See Council Tower Assoc. v. Axis Speciality Ins. Co., 630 F.3d 725, 730–31 (8th Cir. 2011) (applying the Simpson analysis for the same procedural-posture reasons even though the allegedly fraudulently joined, diversity-destroying defendant did not claim to be protected by a form of immunity); but see Junk, 628 F.3d at 445 (suggesting that the allegedly fraudulently joined, diversity-destroying defendant's claim to statutory immunity justified the court's analysis in Simpson). In this case, the procedural posture that existed in Simpson is not present because the federal district court never entered a final judgment in the case. Instead, after ruling that Knudson fraudulently joined Long, the court proceeded no further in resolving the merits of Knudson's claims against Systems Painters and certified its order denying remand for appeal pursuant to 28 U.S.C. § 1292(b). Thus,

-15-

the Simpson analysis is inapplicable here. As a result, Filla and its progeny provide the appropriate standard for determining whether Knudson fraudulently joined Long.[10]

### b. Application of the Filla Standard in this Case

As explained earlier, to prove that a plaintiff fraudulently joined a diversity-destroying defendant, we require a defendant seeking removal to prove that the plaintiff's claim against the diversity-destroying defendant has "no reasonable basis in fact and law." Filla, 336 F.3d at 810 (internal quotation marks omitted). Under this standard, "if it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." Id. (internal quotation marks omitted). However, joinder is not fraudulent where "there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved."[11] Id. at 811.

By requiring the defendant to prove that the plaintiff's claim against the non-diverse defendant has no reasonable basis in law and fact, we require the defendant to do more than merely prove that the plaintiff's claim should be dismissed pursuant

---

[10] We did express some concern in Simpson with applying the Filla standard when the allegedly fraudulently joined, diversity-destroying defendant claims to be immune from suit, but we did not hold that the Filla standard is inapplicable in cases like this one. Simpson, 484 F.3d at 1084 n.2. Moreover, other courts have applied standards like the Filla standard when determining whether a plaintiff fraudulently joined a diversity-destroying defendant who claims immunity pursuant to a state's workers' compensation laws. See e.g., Jernigan v. Ashland Oil Inc., 989 F.2d 812, 815–16 (5th Cir. 1993); Cook v. Pep Boys-Mannie, Moe & Jack, Inc., 641 F. Supp. 43, 45–46 (E.D. Pa. 1985). Thus, we decline to depart from the Filla standard.

[11] Since the Missouri district court in this case dismissed Long, the issue is not whether there is "any reasonable possibility that a state court would rule against [Long]," but rather whether there is "any reasonable possibility" that the state court order dismissing Long "will be reversed on appeal." Poulous, 959 F.2d at 73 n.4.

-16-

to a Rule 12(b)(6) motion. Junk, 628 F.3d at 445 (noting that the Rule 12(b)(6) standard is "more demanding" than the Filla standard). In this analysis, we do not focus on the artfulness of the plaintiff's pleadings. Wilkinson v. Shackelford, 478 F.3d 957, 964 (8th Cir. 2007).

Knudson claims that Long is liable in damages for the injuries that Knudson sustained to his lungs while installing the HVAC systems. In Missouri, when an employee is injured during the course of employment by an "accident," the employee can generally only recover damages pursuant to Missouri's workers' compensation laws. Mo. Rev. Stat. § 287.120. Injured employees generally cannot sue employers or co-employees for such damages in state court. Burns v. Smith, 214 S.W.3d 335, 337 (Mo. 2007) (en banc). "However, an employee may sue a fellow employee for affirmative negligent acts outside the scope of an employer's responsibility to provide a safe workplace." Id. at 338 (internal quotation marks omitted). Missouri courts call this the "something more" exception. Id.

"The question of what constitutes an 'affirmative negligent act' has not proven susceptible of reliable definition." Id. (internal quotation marks omitted). "Courts have essentially applied the rule on a case-by-case basis with close reference to the facts in each individual case." Id. (internal quotation marks omitted). "[T]he notion of an affirmatively negligent act—the 'something more'—can best be described as an affirmative act that creates additional danger beyond that normally faced in the job-specific work environment." Id.

Missouri courts have found that supervisors commit affirmative acts of negligence when they direct employees "to engage in dangerous conditions that a reasonable person would recognize as hazardous beyond the usual requirements of employment." Sexton v. Jenkins & Assocs., Inc., 41 S.W.3d 1, 5 (Mo. Ct. App. 2000) (citing Lyon v. McLaughlin, 960 S.W.2d 522, 526 (Mo. Ct. App. 1998)); see also Burns, 214 S.W.3d at 340 (holding that a supervisor committed an affirmative act of negligence by "intentionally direct[ing] the plaintiff[-employee] to undertake an

activity that [the] defendant knew would result in a particularly dangerous event"); Simpson, 484 F.3d at 1085 (noting that, under Missouri law, "a supervisor is not entitled to his employer's immunity if he directed the plaintiff employee to engage in dangerous conditions that a reasonable person would recognize as hazardous beyond the usual requirements of employment" (internal quotation marks omitted)).

It is not necessary, however, that such a supervisor be responsible for creating the hazardous condition at issue.[12]  Groh v. Kohler, 148 S.W.3d 11 (Mo. Ct. App. 2004), abrogated on other grounds by Burns, 214 S.W.3d at 338–39, illustrates this point.  In Groh, the plaintiff's job required operating a machine that would compress plastic into particular shapes.  Id. at 12.  Over time, hardened plastic would accumulate in the machine and would have to be removed by hand.  The plaintiff's machine began malfunctioning by sporadically compressing on its own.  When the plaintiff told her supervisor, who was the defendant in the case, the supervisor told her to "quit whining" and to "just deal with it."  Id. at 16.  Later, when the plaintiff was reaching her hand into the machine to remove some hardened plastic, the machine compressed on its own and injured the plaintiff's hand.  The Missouri Court of Appeals held that the plaintiff had stated a claim for an affirmative act of negligence because, "[a]lthough [the defendant] is not alleged to have caused the machine to malfunction, her alleged conduct of compelling [the plaintiff] to continue to perform her duties by operating the known dangerous machine that was likely to injure the operator effectively created the dangerous condition resulting in the injuries sustained by [the plaintiff]."  Id.

---

[12] Cf. Burns, 214 S.W.3d at 340 (finding defendant supervisor committed an affirmative act of negligence by directing an employee to operate a concrete mixer until the employee blew a water-pressure tank which the defendant had welded onto the mixer); Hedglin v. Stahl Specialty Co., 903 S.W.2d 922 (Mo. Ct. App. 1995) (finding defendant supervisor committed an affirmative act of negligence by directing an employee to venture onto a makeshift crane which the supervisor had created above a vat of scalding water).

This case is similar to <u>Groh</u>. Knudson's complaint alleges that he was "operating under the direct management and control" of Long, which is essentially an allegation that Long was Knudson's supervisor. Knudson further alleges that Long instructed him to install HVAC systems in construction sites that were very poorly ventilated. Knudson alleges that he and other employees told Long of the poor ventilation and of their breathing difficulties. Nonetheless, Knudson alleges that Long "demanded" that Knudson "get into the [stores] and complete the HVAC contract." Obviously, Long did not introduce the paint particulate into the air inside the construction sites, but, like <u>Groh</u>, Long may have "effectively created the dangerous condition" by ordering Knudson to work in an environment where Long knew the employees he was supervising were having breathing problems.

For the foregoing reasons, "there is arguably a reasonable basis for predicting that [Missouri law] might impose liability" on Long. <u>Filla</u>, 336 F.3d at 811. As a result, Knudson did not fraudulently join Long. Thus, since Systems Painters has not proved that an exception to the time-of-filing rule applies, the district court erred in denying Knudson's motion to remand for lack of original jurisdiction.

## III. Conclusion

For these reasons, we reverse the district court's order denying Knudson's motion to remand, and we return this case to the district court with instructions to remand it to state court.

_____

-19-