**James ARENS,[1] Plaintiff,**

v.

**O'REILLY AUTOMOTIVE, INC., et al., Defendants.**

**Civ. No. 12–687 (RHK/AJB).**

United States District Court, D. Minnesota.

July 3, 2012.

---

1. The Complaint misspelled Arens's surname as "Arnes."

Michael D. Schatz, Adams, Rizzi & Sween, PA, Austin, MN, for Plaintiff.

Thomas A. Gilligan, Jr., Nicholas J. O'Connell, Murnane Brandt, PA, St. Paul, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, District Judge.

This is an employment-discrimination action brought by Plaintiff James Arens against his former employer, Defendant O'Reilly Automotive, Inc. ("O'Reilly"). The case comes before the Court in a somewhat unique procedural posture.[2]

Arens commenced this action on February 27, 2012, in the Mower County. Minnesota District Court, naming as Defendants O'Reilly and his former supervisor, Defendant Rob Pocklington. Arens generally alleged that Defendants had discriminated against him on account of his age and disability, ultimately resulting in the termination of his employment. He asserted four state-law claims: (1) termination in violation of the Minnesota Dismissal for Age Act ("MDAA"), Minn.Stat. § 181.81 *et seq.;* (2) age discrimination in violation of the Minnesota Human Rights Act ("MHRA"), Minn.Stat. § 363A.01 *et*

**2.** As the Court has concluded that oral argument would not materially assist its resolution of the Motion discussed herein, the hearing scheduled for July 9, 2012, is **CANCELED.**

*seq.;* (3) reprisal in violation of the MHRA and MDAA; and (4) failure to accommodate his disability, in violation of the MHRA.

On March 19, 2012, O'Reilly removed the action to this Court, invoking diversity jurisdiction. It acknowledged that Arens and Pocklington are Minnesota citizens, ostensibly defeating diversity. Nevertheless, it asserted that the allegedly unlawful conduct identified in the Complaint occurred "exclusively in [Pocklington's] role as defendant O'Reilly's District Manager," and hence only it—not Pocklington—could be liable on Arens's claims. (Notice of Removal ¶ 4(C).) Accordingly, it averred that Pocklington had been fraudulently joined as a defendant and removal was proper.

Arens has now filed a document styled as a "Motion for Leave of Court to Amend Pleadings and Motion for Remand." (Doc. No. 10.) In that Motion, he argues that Pocklington was not fraudulently joined and, therefore, the Court lacks diversity jurisdiction over this case. He also seeks leave to amend his Complaint to add two new claims, for retaliation in violation of Minnesota Statutes § 176.82 (against both Pocklington and O'Reilly) and for tortious interference with contract (against Pocklington alone).[3] With these new claims added, Arens argues it is even clearer that individual liability against Pocklington may be found in this case, thereby making him an appropriate defendant and, hence, defeating diversity jurisdiction and mandating remand.

The Court must address the remand portion of Arens's Motion before considering amendment. If Pocklington was properly joined as a defendant, then diversity never existed and the Court cannot reach the request for leave to amend—absent jurisdiction, the [C]ourt "cannot proceed at all [and] the only function remaining . . . is . . . [remanding] the cause." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citation omitted); *see also* 28 U.S.C. § 1447(c). If, however, the Court finds fraudulent joinder, then there existed diversity jurisdiction to support removal, the case is properly before the Court, and it may proceed to the alternative request for leave to amend.

■ Hence, the key question is whether Arens fraudulently joined Pocklington as a defendant. "Joinder is fraudulent . . . when there exists no reasonable basis in fact and law supporting a claim against the resident defendant[ ]." *Wiles v. Capitol Indem. Corp.,* 280 F.3d 868, 871 (8th Cir. 2002) (citation omitted). Put another way, "if there is a 'colorable' cause of action— that is, if the state law *might* impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder." *Filla v. Norfolk S. Ry. Co.,* 336 F.3d 806, 810 (8th Cir.2003) (emphasis in original) (citations omitted).[4]

In his Complaint, Arens asserted discrimination claims against Pocklington under the MHRA and the MDAA. But as Defendants correctly note, Pocklington cannot be liable for such discrimination. *See, e.g., Hubbell v. Better Bus. Bureau of Minn.,* Civ. No. 09–1173, 2009 WL 5184346, at *3 (D.Minn. Dec. 21, 2009) (Rosenbaum, J., adopting Report & Recommendation of Nelson, M.J.) (collecting cases finding no individual liability under MHRA for discrimination); *Iyorbo v.*

---

3. The latter claim is styled "personal interference with contract," but all parties discuss this claim as one for *tortious* interference in their Motion papers.

4. "The term 'fraudulent joinder' is a bit misleading, inasmuch as the doctrine requires neither a showing of fraud . . . nor joinder." *Mayes v. Rapoport,* 198 F.3d 457, 461 n. 8 (4th Cir.1999),

*Quest Int'l Food Flavors & Food Ingredients Co.,* Civ. No. 03–5276, 2003 WL 22999547, at *3 (D.Minn. Dec. 19, 2003) (Magnuson, J.). This is due to the text of the MHRA itself, which makes it unlawful for an "employer" to discriminate on the basis of age, disability, or other protected classification. Minn.Stat. § 363A.08, subd. 2. And a supervisor such as Pocklington is not an "employer." *See id.* § 363A.03, subd. 16 (defining "employer" as "a person who has one or more employees," and a "person" as "includ[ing] partnership, association, corporation, legal representative, trustee, trustee in bankruptcy, receiver, and the state and its departments, agencies, and political subdivisions"). The same logic applies to the MDAA claim, as that statute also prohibits certain conduct by "employers." Minn.Stat. § 181.81, subd. 1(a); *see also id.* subd. 1(d) ("The definitions of 'employer' and 'employee' in [the MHRA] apply to this section.").

Arens contends that Pocklington could be held liable under an "aiding and abetting" theory. True, MHRA liability may be imposed on an individual who "[i]ntentionally . . . aid[s], abet[s], incite[s], compel[s], or coerce[s] a person to engage in any of the practices forbidden by" the statute. Minn.Stat. § 363A.14. But Pocklington cannot have aided and abetted O'Reilly's (alleged) violation of the statute, as the company's liability stems from Pocklington's own conduct-in other words, he would effectively be aiding and abetting himself. *See Hubbell,* 2009 WL 5184346, at *3; *Iyorbo,* 2003 WL 22999547, at *3. Simply put, aiding and abetting applies only when a "supervisor was aiding *other employees'* discrimination." *Hubbell,* 2009 WL 5184346, at *3 (emphasis added). Here, the Complaint makes only one passing reference to another employee (*see* Compl. ¶ 14 (asserting inappropriate comments and unequal discipline by "Rob Pocklington and Israel Benitez")), and Arens nowhere cites that allegation to support his aiding-and-abetting theory.

Nevertheless, Arens has also asserted a *reprisal* claim against Pocklington, and the reprisal portion of the MHRA is phrased differently than its discrimination portion. The statute makes it "an unfair discriminatory practice for any *individual who participated* in the alleged discrimination as a perpetrator [or] employer, . . . *or employee or agent thereof* to intentionally engage in any reprisal against any person" who complained of discrimination. Minn.Stat. § 363A.15 (emphases added). This language suggests that supervisors may be held individually liable for engaging in acts of reprisal against employees complaining about discrimination.

To be sure, the statutory language is not entirely clear, and neither side has cited a case expressly holding that a supervisor may—or may not—be individually liable for reprisal under the MHRA. Nor has the Court's own research uncovered one. *Cf. Zmora v. Minnesota,* Civ. No. 01–1905, 2002 WL 539075, at *8–9 (D.Minn. Apr. 10, 2002) (Kyle, J.) (suggesting such liability might exist); *Nelson v. Cnty. of St. Louis,* No. A10–676, 2011 WL 382630, at *3–7 (Minn.Ct.App. Feb. 8, 2011) (upholding verdict for plaintiff against both employer and supervisor for reprisal under MHRA, without addressing whether individual liability exists for such claim). Moreover, the Complaint is sparse on details regarding the alleged reprisal, as Defendants correctly note. (*See* Compl. ¶ 31.)

But in the fraudulent-joinder analysis, "we do not focus on the artfulness of the plaintiff's pleadings." *Knudson v. Sys. Painters, Inc.,* 634 F.3d 968, 980 (8th Cir.2011). It is a defendant's burden to establish fraudulent joinder, and that burden is a heavy one. *See, e.g., Polito v. Molasky,* 123 F.2d 258 (8th Cir.1941) ("The burden . . . is upon the removing defen-

dant to prove ... fraudulent joinder by clear and convincing evidence."); *Wells' Dairy, Inc. v. Am. Indus. Refrigeration, Inc.,* 157 F.Supp.2d 1018, 1026 (N.D.Iowa 2001) ("The heavy burden of proving fraudulent joinder rests on the defendant.") (citation omitted). It must be "*clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant." *Knudson,* 634 F.3d at 980 (emphasis in original) (citation omitted). The question is whether "there is *arguably* a *reasonable* basis for predicting that the state law *might* impose liability based upon the facts involved," *Filla,* 336 F.3d at 811 (emphases added), and "[a]ll doubts about federal jurisdiction should be resolved in favor of remand to state court," *In re Prempro Prods. Liab. Litig.,* 591 F.3d 613, 620 (8th Cir.2010).

■ Where, as here, the defendant's potential liability under state law is unclear, a court deciding whether the defendant was fraudulently joined "has no responsibility to *definitively* settle the ambiguous question of state law." *Filla,* 336 F.3d at 811 (emphasis in original). Rather, "the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand *but simply to remand the case and leave the question for the state courts to decide." Id.* (emphasis added). This principle aptly applies here. The Court simply cannot conclude that Minnesota law would (or would not) impose liability on Pocklington for reprisal. Accordingly, the Court determines that he was not fraudulently joined, diversity does not exist, removal was improper, and the case must be remanded.

The Court notes, however, that it would remand this action even if Defendants were correct that Pocklington *was* fraudulently joined; in that case, the Court would have been required to address Arens's alternative request for leave to amend to add two new claims against Pocklington. Leave to amend is to be freely granted "when justice so requires." Fed.R.Civ.P. 15(a). Defendants do not argue that the proposed amendment was untimely, unduly prejudicial, or showed bad faith. *See Crest Constr. II, Inc. v. Doe,* 660 F.3d 346, 358 (8th Cir.2011) (noting that each provides a valid basis to deny amendment). Rather, they argue that the proposed additional claims are futile. Were the Court to reach this question, it would not agree.

Notably, one of the claims Arens seeks to add against Pocklington is for tortious interference with his employment relationship. Defendants argue that this claim fails because "*Nordling [v. Northern States Power Co.,* 478 N.W.2d 498 (Minn. 1991) ], clearly holds [that] an employer and its agents cannot tortiously interfere with an employment contract to which they are a party. There is no cognizable cause of action for tortious interference ... with Arens'[s] employment contract by ... Pocklington." (Mem. in Opp'n at 18.) But *Nordling* did not "clearly hold" that a supervisor cannot tortiously interfere with an employee's employment contract in—fact, it held just the opposite. 478 N.W.2d at 507 ("[W]e conclude that a company officer, agent or employee is privileged to interfere with or cause a breach of another employee's employment contract with the company, *if that person acts in good faith,* whether competently or not, believing that his actions are in furtherance of the company's business. *This privilege may be lost, however, if the defendant's actions are predominantly motivated by malice and bad faith, that is, by personal ill-will, spite, hostility, or a deliberate intent to harm the plaintiff employee.*") (emphases added). Under *Nordling,* the dispositive issue is the supervisor's motivation for his conduct; malicious or bad-faith actions are not insulated from liability. *See also, e.g.,*

*Fahrmann v. Fredd,* No. C5–01–2034, 2002 WL 1467451, at *5 (Minn.Ct.App. July 1, 2002) ("[A]n at-will employment agreement can support a claim for tortious interference with contract by an employee against a supervisor if the supervisor's actions were predominantly motivated by malice.").

In both his Complaint and his proposed Amended Complaint, Arens alleges that Pocklington's conduct was borne of hostility toward older and disabled persons. If proven true, this would provide a sufficient basis under *Nordling* to establish malice, which is "nothing more than wrongful conduct done without legal justification or excuse." 478 N.W.2d at 506. Furthermore, malice generally presents a fact issue for the jury. *E.g., Smith v. Lindell,* No. A08–1853, 2009 WL 3818214, at *4 (Minn.Ct. App. Nov. 17, 2009). As a result, if the Court reached this issue, it would be unable to conclude that the proposed tortious-interference claim is futile. And if that claim against Pocklington were added to the Complaint, diversity would be destroyed and remand would be required.[5]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Arens's Motion for Remand (Doc. No. 10) is **GRANTED,** and this action is **REMANDED** to the Mower County, Minnesota District Court. The Clerk of the Court shall mail a certified copy of this Order to the Clerk of the Mower County District Court.

---

5. The proposed amendment also implicates 28 U.S.C. § 1447(e), which provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." In other words, even if not futile, the Court could exercise its discretion to deny Arens's diversity-defeating amendment. In deciding whether to grant leave to amend in such circumstances, courts "consider whether the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has delayed in requesting amendment, whether the plaintiff will be significantly injured if amendment is refused, and any other factors bearing on the equities." *Ryan ex rel. Ryan v. Schneider Nat'l Carriers, Inc.,* 263 F.3d 816, 819 (8th Cir.2001) *(per curiam )* (citation omitted). These factors would not favor denying amendment here. Arens sued Pocklington from the outset, undermining the contention that the proposed amendment was designed to defeat federal jurisdiction. Moreover, this case is in its infancy; Arens was not dilatory in seeking amendment. And, if he were not permitted to join Pocklington in this action, he would be forced to proceed on two fronts: in this Court (against O'Reilly) and in state court (against Pocklington).