**Jeff and Angel DUNCAN; Lynn and Mary Mayall; and Colonial Roofing, LLC, Plaintiffs**

v.

**EXXON MOBIL CORPORATION; Exxon Mobil Pipeline Company; Mobile Pipe Line Company; and David L. Raulston, Defendants.**

**No. 4:13–CV–00400–BRW.**

United States District Court, E.D. Arkansas, Western Division.

Sept. 13, 2013.

Charles D. Davidson, David Louis Gershner, Davidson Law Firm, Ltd., Little Rock, AR, for Plaintiffs.

Edwin L. Lowther, Jr., Michelle Marie Kaemmerling, Stephen R. Lancaster, Wright, Lindsey & Jennings, Little Rock, AR, for Defendant, Exxon Mobil Corporation.

Jane A. Kim, Wright, Lindsey & Jennings, Little Rock, AR, for Defendant, Exxon Mobil Pipeline Company.

Gary D. Marts, Jr., Scott Andrew Irby, Wright, Lindsey & Jennings, Little Rock, AR, for Defendant, Mobil Pipe Line Company.

Michael D. Barnes, Wright, Lindsey & Jennings, Little Rock, AR, for Defendants, Exxon Mobil Pipeline Company, and David L. Raulston.

## ORDER

BILLY ROY WILSON, District Judge.

Pending is Plaintiffs' Motion to Remand (Doc. No. 11). Defendants have responded.[1] Plaintiffs have replied.[2] On September 5, 2013, an on-the-record telephone conference was held to discuss the Mo-

1. Doc. No. 13.

2. Doc. No. 14.

tion.[3] I have reviewed the parties' pleadings, and have considered the arguments made during the telephone conference. For the reasons set out below, the Motion is GRANTED.

## I. BACKGROUND [4]

The ExxonMobile Defendants [5] own and operate the Pegasus Pipeline, an underground pipeline running between Patoka, Illinois, and Corsican, Texas, through Faulkner County, Arkansas. The pipeline was built to carry oil north from Texas to Illinois. But in 2006, the ExxonMobile Defendants began using it to transport Canadian tar sands south. In 2009, the pipeline's daily capacity was increased from 65,000 to 95,000 barrels. This increase in the pipeline's carrying capacity caused the pipeline to stress. Additionally, the tar sand's abrasive texture, along with the reversed flow of the pipeline, caused accelerated wear on the pipeline. These changes and Defendants' failure to properly inspect and repair the pipeline, left the pipeline in a defective and hazardous condition.

Due to the pipeline's dilapidated state and Defendants' inaction, the pipeline ruptured in March 2013 in Faulkner County, Arkansas spilling over 5,000 barrels of Wabasca Heavy Crude—a mixture composed of tar sands, solvents, and petroleum.

Plaintiffs sued the ExxonMobile Defendants and David Rulston—an ExxonMobil Pipeline Company employee who is the maintenance and operations technician for the pipeline in Faulkner County. Plaintiffs assert three causes of action: negligence, nuisance, and strict liability.

The action was filed in the Circuit Court of Faulkner County, Arkansas. Defendants removed the case to federal court, asserting that this Court has authority to hear the claims under the Court's diversity-of-citizenship jurisdiction.[6] Defendants contend that diversity exists between the parties because: (1) Raulston was fraudulently joined and his citizenship should be ignored; and (2) the remaining parties are of completely diverse citizenship.[7] Plaintiffs argue that they have stated a colorable claim against Raulston and, therefore, complete diversity is lacking and the case should be remanded to state court.[8]

## II. LEGAL STANDARD

An action filed in state court may be removed to federal court if it originally could have been brought in federal court.[9] Under the diversity-of-citizenship jurisdiction granted to federal courts, a civil action between citizens of different states with over $75,000 in dispute may be brought in federal district court.[10] For a state-court action to be removable based on diversity-of-citizenship jurisdiction: (1) all properly joined and served defendants must file a notice of removal with the district court within 30 days of receipt of the state-court summons and complaint; (2) the parties' citizenship must be completely diverse—

**3.** *See* Doc. No. 15.

**4.** Unless noted otherwise, the facts in this section, which are presumed true for purposes of this order, are taken from Plaintiffs' Complaint. *See* Doc. No. 2.

**5.** Exxon Mobil Corporation, Exxon Pipeline Company, and Mobile Pipe Line Company are referred to collectively as the "ExxonMobile Defendants."

**6.** Doc. No. 1.

**7.** *Id.*

**8.** Doc. No. 12.

**9.** 28 U.S.C. § 1441(a).

**10.** 28 U.S.C. § 1332(a)(1).

*i.e.*, each plaintiff must be of diverse citizenship from each defendant—both at the time the suit was filed in state court and when the petition for removal was filed; (3) there must be $75,000 in controversy; and (4) none of properly joined and served defendants can be a citizen of the forum State.[11]

■ One exception to the diversity "time-of-filing" requirement is the fraudulent-joinder exception.[12] The purpose of this exception is to prevent a plaintiff from thwarting a defendant's ability to remove an action by fraudulently joining a non-diverse defendant "who has 'no real connection with the controversy.' "[13]

■ Fraudulent joinder exists when a plaintiff files a "frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal."[14] To prove fraudulent joinder, the defendant must prove that the plaintiff's claim against the diversity-destroying defendant has "no reasonable basis in fact and law."[15] The standard for determining whether a defendant was fraudulently joined was stated by the Eighth Circuit in *Filla v. Norfolk Southern Ry. Co.*[16] There, the Court said that "the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved."[17]

The Eighth Circuit later noted that the *Filla* standard is more demanding than Federal Rule of Civil Procedure 12(b)(6)'s standard.[18] To dismiss a claim under Rule 12(b)(6), the defendant must show that the complaint does not "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[19] Under *Filla*, however, the question "turns on whether [the plaintiff] might have a 'colorable' claim against [the defendant], not on the artfulness of [the plaintiff's] pleadings."[20] A "colorable" claim is one that is "reasonable but speculative."[21] In other words, a defendant cannot establish fraudulent joinder by showing that the claim against the non-diverse defendant fails to meet *Twombly's* plausibility standard.

■ State law must be analyzed to determine whether there is a reasonable factual and legal basis for the claim against the non-diverse defendant; however, the "question is ultimately one of feder-

---

**11.** *See* 28 U.S.C. §§ 1441 and 1446; see also *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 89–90, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005); *Knudson v. Sys. Painters, Inc.,* 634 F.3d 968, 975 (8th Cir.2011).

**12.** *Knudson,* 634 F.3d at 976.

**13.** *Id.* (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell,* 232 U.S. 146, 152, 34 S.Ct. 278, 58 L.Ed. 544 (1914)).

**14.** *Junk v. Terminix Intern. Co.,* 628 F.3d 439, 445 (8th Cir.2010) (quoting *In re Prempro Prods. Liab. Litig.,* 591 F.3d 613, 620 (8th Cir.2010)).

**15.** *Knudson,* 634 F.3d at 980 (quoting *Filla v. Norfolk S. Ry. Co.,* 336 F.3d 806, 810 (8th Cir.2003)).

**16.** 336 F.3d 806 (8th Cir.2003).

**17.** *Id.* at 811.

**18.** *Junk,* 628 F.3d at 445; see also *Knudson,* 634 F.3d at 980.

**19.** *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

**20.** *Id.* at 446 (quoting *Wilkinson v. Shackelford,* 478 F.3d 957, 964 (8th Cir.2007)).

**21.** *Filla,* 336 F.3d at 810, n. 10.

al law." [22] All doubts should be resolved in favor of remand.[23] This includes resolving all fact disputes and ambiguities in state law in the plaintiff's favor.[24] If there is any uncertainty, "the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide." [25]

■ The party invoking federal jurisdiction has the burden of proving jurisdiction is proper by a preponderance of the evidence.[26] Because this action was removed to federal court by Defendants, the burden is theirs.

## III. DISCUSSION

Defendants argue that there is no basis in law or fact for Plaintiffs' claim against Raulston. According to Defendants, Raulston cannot be sued for the pipeline's rupture under Arkansas law because he had no involvement in the decisions to reverse the pipeline's flow, increase its capacity, or use it to transport tar sands—and because the Complaint's allegations do not allege sufficient personal involvement by Raulston in any of the events leading to the pipeline's rupture.[27] Defendants further state that Raulston has no managerial or supervisory responsibilities, and that "his primary responsibility is 'electrical maintenance and repair' for the pipeline." [28]

Plaintiffs assert that Raulston need not have been a decision-maker to be liable under Arkansas law. Raulston is individually liable for negligence, according to Plaintiffs, because he is responsible for the pipeline's electrical maintenance and repair and his failure to adequately inspect and repair the pipeline caused the pipeline's rupture.[29] Thus, the dispositive question here is whether the facts alleged support a reasonable basis for predicting that Raulston might be liable under Arkansas negligence law.

■ Under Arkansas law, to prevail on a negligence claim a plaintiff must plead and prove that the defendant owed a duty to the plaintiff, the defendant breached that duty, and the breach was the proximate cause of the plaintiff's injuries.[30] The Arkansas Supreme Court says that "when it can be shown that an individual employed by a corporation is personally involved in the events surrounding an injury, the individual may be sued." [31]

■ After reviewing the Complaint, I am satisfied that the factual allegations are sufficient to support a reasonable basis for predicting that Raulston *might* be liable under Arkansas law.

Accepting Plaintiffs' version of the facts as true and drawing all reasonable infer-

**22.** *Knudson*, 634 F.3d at 978 (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 n. 4 (7th Cir.1992)).

**23.** *Id.* at 975 (quoting *Junk*, 628 F.3d at 446).

**24.** *Filla*, 336 F.3d at 811.

**25.** *Id.* (quoting *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)).

**26.** *Knudson*, 634 F.3d at 975 (citing *In re Prempro Prods. Liab. Litig.*, 591 F.3d at 619).

**27.** Doc. No. 13.

**28.** *Id.*

**29.** Doc. Nos. 12, 14.

**30.** See *Branscumb v. Freeman*, 360 Ark. 171, 179, 200 S.W.3d 411 (2004).

**31.** *Bayird v. Floyd*, 2009 Ark. 455, at *6, 344 S.W.3d 80 (2009) (quoting *McGraw v. Weeks*, 326 Ark. 285, 294, 930 S.W.2d 365 (1996)) (internal quotations omitted).

ences in their favor (which I am required to do) the situation presented is this:

The ExxonMobile Defendants decided to reverse the pipeline's flow, increase its capacity, and use it to carry heavy crude containing tar sands instead of petroleum. These changes added stress to the pipeline and caused accelerated wear.

Raulston is the operations maintenance technician for the pipeline in Faulkner County, Arkansas.

Raulston's primary responsibility is electrical maintenance and repair for the Pegasus Pipeline in Arkansas.

Raulston is listed as the "Exxon/Mobile Pipeline Emergency Contact" for Faulkner County in the Central Arkansas Water Risk Mitigation Plan.

The changes in the pipeline's use caused the pipeline to rupture.

If the changes hadn't been made, or if the pipeline had been properly inspected and repaired, the pipeline would not have ruptured.

Based on these allegations, I predict that an Arkansas court would find that Raulston was sufficiently involved in the events surrounding the pipeline's rupture to be sued for negligence. Since Raulston was responsible for inspecting and repairing the pipeline, I believe an Arkansas court *might* conclude that he owed a duty to Plaintiffs to exercise ordinary care in inspecting and repairing the pipeline's electrical equipment. If it's shown that Raulston failed to exercise ordinary care, and his failure is a proximate cause of Plaintiffs' damages, he may be liable. Additional discovery may reveal that Raulston cannot be liable. As it stands now, however, there is a reasonable basis in both fact and law for predicting that Raulston *might* be liable to Plaintiffs.

Since Plaintiffs have stated a colorable claim against Raulston under Arkansas law, Defendants have failed to show that Raulston was fraudulently joined. Accordingly, this case must be remanded to state court.

## CONCLUSION

Based on the above findings of fact and conclusions of law, this case must be remanded to state court because subject-matter jurisdiction is lacking. Accordingly, Plaintiffs' Motion to Remand (Doc. No. 11) is GRANTED. The case is REMANDED to the Circuit Court of Faulkner County, Arkansas under 28 U.S.C. § 1447(c).